## HAYNIE *v.* HUDGINS.

[85 South. 99, In Banc. No. 21273.]

1. HABEAS CORPUS. *When averments of sworn answer must be considered as true stated.*

When a *habeas corpus* cause is heard upon petition and answer, both sworn to, the averments of the answer must be considered as true.

2. DIVORCE. *Effect of foreign decree as to conditions before and after divorce stated.*

The judgment of a court of a sister state in a divorce proceeding, granting a wife a divorce and awarding to her the custody of a minor child, will be given full faith and credit, and taken as decisive of the facts and conditions existing at the time of the divorce; but, in a proceeding between the parents for the custody of the child in this state, the previous adjudication has no controlling force and effect upon facts and conditions subsequently arising after the decree of divorce.

3. HABEAS CORPUS. *Court can inquire into custody of child as between parents divorced in foreign state.*

Where a child was brought into this state and is in the custody of its father, a resident citizen of this state, in a *habeas corpus* proceeding brought by the mother for the possession of the child, and the answer of the father to the petition alleges an abandonment of the child by the mother, and that subsequently to the decree of divorce of a sister state awarding its custody to the mother she has become an unfit and unsuitable person to have the custody of the child, this court has jurisdiction to inquire into the merits of the controversy.

4. HABEAS CORPUS. *Child's welfare is paramount consideration.*

In a contest between a father and mother for the custody of a child the welfare of the child is the paramount consideration of the court.

APPEAL from circuit court of Hinds county.

HON. L. B. JONES, Special Judge.

*Habeas corpus* by Mrs. Bonnie E. Hudgins against W. E. Haynie, for the recovery of the possession of a minor. Judgment for petitioner, and respondent appeals. Reversed and remanded.

*Teat & Potter,* for appellant.

The first part of counsel's brief for appellee is designated as "the facts." There are no facts in this case, as the special chancellor decided the case on the pleadings, on a motion to strike the cross-bill from the files. Of course, this motion, admitted, the same as a demurrer, all of the allegations of the so-called cross-petition, and we were permitted on this appeal to take these facts alleged in the cross-petition as true.

Appellee admits in their brief that the decree of a sister state is not binding on the courts of Mississippi, affecting the custody of a child, where conditions are changed and the court has jurisdiction of the parties, but contends that this court has no jurisdiction of the parties to this suit. Granting for the sake of argument that this is true, then this court should dismiss appellee's petition of its own motion, as questions of jurisdiction do not have to be raised. However, we think that the chancery court did have the jurisdiction for the child was in the First Judicial District of Hinds county, Mississippi. (and as alleged in the answer or return of the appellant, was domiciled there, but as we take it in this case, the domicile of the child is not material. The appellee voluntarily submitted herself to the jurisdiction of the court and the appellant was a resident citizen of the said Hinds county, and state of Mississippi, and, as the relationship of parent and child follows the person of the parent whenever a court has jurisdiction of the parents, they have the jurisdiction of the relationship of parent and child.

In support of their argument that this court has no jurisdiction counsel cites the case of *Taylor* v. *Jetter,* 81 Am. Dec. 205. That case was decided on an absolutely different matter. The supreme court of Georgia held there that the father was the proper person to have the custody of his own child, and when the child lived in

Alabama and had no property at all in Georgia, that the court of Georgia, in an *ex parte* proceeding was without jurisdiction to confer on Taylor the guardianship of the Alabama child.

The distinction between this case and that of *Wells* v. *Anderson,* 60 Miss. 373, is apparent at a glance. Judge CAMPBELL, in the Wells case, holds that where a guardian is validly and legally appointed in a sister state at the request of the dead parent and no question is raised as to the fitness of that guardian, that he is entitled to the custody of his wards; and, in the *Bonner case,* 52 So. 513, Judge ANDERSON does not, as stated in counsel's brief, overrule the *Foster* case, 6 How. 402, but holds in the Bonner case the Foster case is not authority and especially recognizes that case. Thus it will be seen that the Foster case was not overruled but on the other hand especially recognized to be still the law in this state. As will be seen by a reading of the Bonner case, that case went off on our statute.

In addition to that, the case of In Re Bort cited in our first brief is authority in our favor on the point of jurisdiction. In the Bort case the children were awarded to Mr. Bort, notwithstanding that Mrs. Bort took them from Wisconsin where the decree was granted, into Kansas, and the Kansas court held that she was the proper person to have the care of the children, notwithstanding the Wisconsin decree. Of course the question of jurisdiction was not raised but it was not necessary to raise this question. The same is true in the case of *Allen* v. *Allen,* 40 Hun, 616, and *Wilson* v. *Elliott,* 73 S. W. 946. In the Wilson case, the mother in absolute disregard of the New Mexico court took her children out of New Mexico and took them into Texas. The father introduced his New Mexico decree, but the court held that it was not conclusive, as the question at the first trial, was, who was more suitable to have the care of the children at that time, and the question

at the second trial was, who was more suitable to have the custody of the children at the later date.

As stated in the Foster case the strict legal rights of the parties do not govern and the courts, in cases of this kind, are bound to consider the interest of the child as paramount to all other things.

The precise point relied upon by counsel was raised in the case of *Thorndike* v. *Rive*, 24 Law Reps. 19. We have been unable to find this report but will quote the case as cited in 2 Bishop's Marriage and Divorce (5 Ed.), par. 204, p. 191, where the question of the custody of a child was adjudicated in Maryland on a suit for divorce by the husband against the wife, wherein the husband's prayer for divorce was allowed and the custody of the child given to the husband; and after the husband being temporarily with the child in Massachusetts, the wife there attempted, by *habeas corpus*, to obtain the custody of the child.

"Upon this state of facts," says the report, "the respondent contended that by a decree of the courts of Maryland, where he had his legal domicile, and which was the legal domicile of the wife, the custody of the child had been given to him, this court could not obtain jurisdiction of the case simply by his being there with the child temporarily on a visit which might be determined at any moment. The court held, however, that the decree of any tribunal as to the custody of a child was never final but the same tribunal or any other where the child was either temporarily or permanently staying, might consider the question upon the facts then existing, and looking at the welfare of the child, determine whether any and what change would be made in regard to its custody, and this rule as laid down by the courts of Massachusetts is cited with approval by Mr. Bishop."

We therefore most respectfully contend that the courts of Mississippi have full jurisdiction to go into the matter on its merits; that the child is within the

boundary of the state, and that its father is within the boundary of the state, and that its mother voluntarily submitted herself to the jurisdiction of the court; that as the court has jurisdiction of the relationship of parent and child, therefore the chancery court should have determined on its merits which of the parents were best suited to have the care and custody of this unfortunate child.

We therefore insist that this court should reverse the decree of the chancellor and remand this case to be heard on its merits.

*Scott & Scott,* for appellees.

According to our view of this case, the question before the court is purely one of jurisdiction. It is elementary that a court must have jurisdiction of a cause, otherwise its findings would be void *ipso facto.* A decree by a court of a sister state is not binding on the courts of Mississippi in cases affecting the custody of children where conditions have changed and the court has jurisdiction of the parties; this view is supported by the overwhelming weight of authority. The lower court in deciding this case, did not consider changed conditions; there was no evidence of changed conditions or the character of the contending parties before it. It did consider the question of jurisdiction; on this question it based its findings; and on this question it must be affirmed or reversed.

In order to show what court has jurisdiction of Bettie E. Haynie to determine the merits of this case we shall undertake to establish: First, that domicile determines jurisdiction; second, that the domicile of a child whose custody is awarded to its mother in a divorce preceeding is that of its mother; third, that the surreptitious act of the father or a stranger in removing the child from the domicile of the mother does not change its

domicile and .defeat the jurisdiction of the courts of its mother's residence to determine the welfare of the child.

These propositions follow each other in logical sequence, and if true, determine what court has jurisdiction to award the custody of Bettie' E. Haynie. We shall consider them in order.

(1) We think our first and third propositions are conclusively established by the Mississippi supreme court in an opinion by Chief Justice CAMPBELL, rendered in the case of *Wells* v. *Andrews*. This proposition is abundantly supported by authorities from other states. *Taylor* v. *Jetter*, 81 Am. Dec. 205. The supreme court of Georgia sustains this view. *Lanning* v. *Gregory*, 99 S. W. 542; Brown Jurisdiction of Courts, pars. 79 and 80, 150 L. R. A. 666; see also R. C. L., page 549.

(3) Our third proposition is that the surreptitious act of a dissatisfied party in removing a child from its domicile fails to confer jurisdiction on the courts, where the child is taken to determine who shall have its custody. Even where a child happens to be within the territorial limits of a particular court, and is not there by the wrongful act of another. Jurisdiction does not vest in that court to adjudge a change of relation between the child and parties contending over it. Certainly then one does not succeed when he contemptuously removes a child from the jurisdiction of one court for the purpose of conferring jurisdiction on another.

We have said that the supreme court of Mississippi has established this proposition in the case of *Wells* v. *Andrews, supra*, 60 Miss. 373; 10 L. R. A. (N. S.) page 693; 19 L. R. A. (N. S.), page 690; 201 S. W. 780.

If a temporary abode does not confer jurisdiction on a court to make disposition of an infant, certainly one cannot force jurisdiction of a child on the courts of his home county by removing the child against her will and the will of her legal custodian from another state, in contempt of the court, whose ward the child is.

Law books are replete with authority that an infant once in court, for any cause whatsoever, becomes the ward of the court, which, from then on, has full power to make any disposition of its person or estate deemed proper. 14 R. C. L., p. 267, is sufficient reference for this statement. 52 So. 513; 133 Ga. 195; 33 Ga. 195.

### ANSWER TO ARGUMENT OF APPELLANT.

There is little for us to answer in the brief of appellant for the reason that he assumes as true the proposition our argument is intended to establish. On page five of his brief this assumption is expressed thus: "The court of the latter state (Mississippi in this case) has full and complete jurisdiction over both father and mother, the child and the *status* of the parents and child." Any court having such jurisdiction has full power, in our opinion, to make any disposition of the child it sees fit. The only consideration it is bound to give to a decree of another court whether in Mississippi or some other state . . . is to accept as true the findings at the time of the decree. It can then make a new disposition of the child on the basis of new facts and changed conditions.

Appellant is mistaken in his statement on page three of his brief that the lower court awarded the child on the ground that the Mississippi court must give full faith and credit to decree of Tennessee courts under the full faith and credit clause of the Federal Constitution. That clause had nothing to do with the decision. It comes into operation in the case of minors only when a court has jurisdiction to determine the merits of the case; the decree is then given such weight as it appears to deserve. We repeat that the special chancellor decided this case on the ground that he did not have jurisdiction to go into the merits of the case.

We have already cited some of the authorities referred to by appellant but shall here notiie them brief-

ly. His first authority is the Mississippi case of *Alston* v. *Foster*. This case is distinguished from the present one in at least four particulars; first, the question of jurisdiction seems not to have been prominently before the court; second, the child was in the possession of its mother and the opinion shows clearly why she should have its possession; third, complainants were claiming under a testamentary guardianship. It presents a nice question of law whether such guardianship is superior to the claim of a mother; fourth, if this case is in point it has been overruled by two Mississippi cases of *Herndon* v. *Bonner*, and *Wells* v. *Andrews, supra*. A full discussion of the points would carry us too far afield but we submit them as questions which appellant must answer before he can claim the case in line with the issue before the court.

We shall make no separate mention of the other cases cited by appellant. They all contain good law and establish beyond a doubt what he conceives to be the "sole question involved in the case." That "a decree of a sister state awarding the custody of a child" can be changed or modified by the courts of Mississippi "when conditions affecting the fitness of the parties to have the custody of the child have materially changed . . . providing, of course, they have jurisdiction over the parties." But jurisdiction, as we see it, being the sole question in this case, these authorities do not conflict with our view.

SYKES, J., delivered the opinion of the court.

This suit is a *habeas corpus* proceeding in which the appellee, Mrs. Hudgins, was petitioner and appellant, W. B. Haynie, respondent or defendant, for the recovery of the possession of a minor daughter named Bettie E. Haynie, whose age is about fourteen years. The suit was originally brought before the circuit judge, and

was by him transferred to the chancery court. The suit presents a controversy for the custody of the child between the appellee mother and the appellant father. The substantial averments of the petition are, in substance, as follows.

Mrs. Hudgins and Haynie were married in Memphis, Tenn., in 1905. In 1906 the appellant, Haynie, in the circuit court of Shelby county, Tenn., filed a petition for divorce against his then wife. The wife filed an answer and cross-bill. Upon the trial of this divorce proceeding no testimony was offered by the husband, and the original petition was dismissed, but the case was retained for adjudication upon the merits of the cross-petition, and upon the hearing the wife was granted a divorce from W. B. Haynie upon the ground of cruel and inhuman treatment. At this time the daughter, Bettie E. Haynie, was a baby, and the decree of the court further recites that—

"She [Mrs. Haynie] appearing to be a proper person to have the custody of said child, the custody of the same is hereby awarded to the cross-complainant, Bonnie E. Haynie, and the defendant, W. B. Haynie, is hereby perpetually enjoined from interfering with her in the matter of the custody of the said child, and from any other kind of interference with or molestation of the said cross-complainant or of said child."

It is further alleged in the petition that from the date of the decree until recently Mrs. Hudgins has had the care of this child, and has supported her, sometimes leaving the child in the possession of her sister, or other relatives of relator, when it was not convenient for her to keep the child in her possession and at the same time work for her support; that at the time of the divorce proceeding the respondent (Haynie) disowned the child, and refused to claim it as his own; that he has done nothing for the child, neither has he made any claim for her possession up until a few weeks ago.

It is further alleged that since the final decree of divorce both relator and respondent have married again; that some time in February, 1920, W. B. Haynie went to Memphis, and succeeded in getting possession of the child by enticing her away from her home and bringing her to Clinton, Hinds county, Miss., and that he now has her in his possession and illegally detains her; that the child rightfully belongs to the relator, in accordance with the final decree in the divorce proceeding above referred to.

The answer in substance admits the marriage and decree of divorce as averred in the petition. It denies that the relator had charge of the child or had supported her, or had left the child in possession of a sister. It avers that the child is his. It admits the remarriage of both relator and respondent. It denies that he enticed the child away from its home in Tennessee, but avers that the relator had abandoned the child completely, and that the child was in the custody of its maternal grandmother, and that at the request of the grandmother the respondent took possession of the child and brought her to his home in Mississippi. The answer is then headed "Cross-Bill." There was no necessity for this heading, and the averments contained in the so-called cross-bill should be, and will be, treated by us as averments of the answer.

Without stating in detail the facts herein contained, it is sufficient to say that, if proven, they show that since the rendition of the decree of divorce in Shelby county, Tenn., the mother of the child, Mrs. Hudgins, has become and is now an unsuitable and unsafe person to have the care and custody of this child; that the child has taken her domicile in Hinds county, Miss.; that she is an unusually precocious child, in her fourteenth year; that she does not desire to live with the relator, but is devotedly attached and desires to live with her father. It then alleges facts tending to show

that the father is a suitable person to have the care and custody of the child. The answer was sworn to by the appellant, Haynie.

The case was tried before the chancellor upon the petition and answer, and the prayer of the petition was granted, and the custody of the child was awarded to Mrs. Hudgins. An appeal with *supersedeas* was prosecuted to this court.

It is the contention of the appellee that the question presented on this appeal is one of jurisdiction. This contention is aptly stated by appellee in his brief as follows:

"In order to show what court has jurisdiction of Bettie E. Haynie to determine the merits of this case, we shall undertake to establish: First, that domicile determines jurisdiction; second, that the domicile of a child whose custody is awarded to its mother in a divorce proceeding is that of its mother; third, that the surreptitious act of the father or a stranger in removing the child from the domicile of the mother does not change its domicile, and defeat the jurisdiction of the courts of its mother's residence to determine the welfare of the child."

As sustaining this contention, the appellee relies upon the cases of *Wells* v. *Andrews,* 60 Miss. 373, and *Herndon et ux* v. *Bonner,* 97 Miss. 328, 52 So. 513.

In the case of *Wells* v. *Andrews, supra,* the parents of the children resided in Tennessee at the time of their death. The appellant, Wells, was the lawfully constituted guardian of the minors, appointed by the proper court in Tennessee. The minors were removed at the instance of their grandmother to Mississippi. Under these conditions the court held that the minors were domiciled in Tennessee and that the jurisdiction of the court there over them and their estate there was not destroyed by their removal by their grandmother to Mississippi. There was no allegation in that case that

the guardian was an unsuitable person to have the care and custody of the children. In fact, the children were surreptitiously removed from Tennessee into Mississippi during the pendency of the guardianship proceedings and before the guardian had been appointed.

In the case of *Herndon* v. *Bonner, supra,* Bonner had been legally appointed guardian of the persons and estates of the minors by the chancery court of Jones county. The minors were on a visit to their grandparents in Jones county. The grandparents declined to send the children home, and the guardian was compelled to bring *habeas corpus* proceedings for their possession. In the opinion of the court it is said that: "The right to the custody of infants having a guardian is fixed by statute in this state, . . . which provides that 'the guardian of a minor who has no parent shall be entitled to the custody of the minor as well as of his estate, or the court or the chancellor may appoint one person to be the guardian of the person, and another to be the guardian of the estate of the minor.' . . . The circuit judge had no power to override the statute and decree of the court. This decree under the statute fixed the right to the custody of the wards in the guardian, until vacated by the court making it on a proper proceeding for that purpose, which is amply provided for by law. They are the wards of the chancery court, which alone has the power to determine who shall have the custody of their persons and estates. It is insisted that *Foster* v. *Alston,* 6 How. 406, is authority to the contrary. We hold that it is not. The question there was whether the testamentary guardian in Tennessee (the uncle) was entitled to the custody of his wards, as against their mother in Mississippi, with whom they were living, and thoroughly capable of having their custody, care, and education. The court refused to recognize the legal right of the Tennessee guardian, under the laws of that state, as against the right of the mother and the best in-

terest of the wards in this state. . . . The question here is whether the court in a *habeas corpus* proceeding will overturn a statute of this state by awarding the custody of the minors to one person when the law says another shall have it, which we answer in the negative.''

As is pointed out in this opinion, the statutory laws relating to the appointment and removal of guardians governed the decision of that case. In the *Wells Case, supra,* the contest was likewise between a guardian and grandparents. It is to be noted that in neither case were the rights of the parents considered.

Neither of these cases is in conflict with that of *Foster* v. *Alston,* 6 How. 406. In that case the father, mother, and children resided in Tennessee. Upon the death of the father, an uncle by the name of Alston was appointed giardian of the persons and estates of the two minor children. Subsequent thereto Mrs. Alston married the appellant, Foster, and Mr. and Mrs. Foster then removed to Holly Springs, Miss. Mrs. Foster went to Tennessee, and forcibly took her children and carried them to Holly Springs. The guardian, Alston, then brought *habeas corpus* precedings to Holly Springs for the possession of the children. The lower court awarded him possession, and the mother and her second husband appealed. In a very elaborate opinion in which the testimony is carefully reviewed, the court considered the case upon its merits, and held that it was to the best interest of the children that their care and custody be to the mother, and reversed the decision of the lower court. In this case the minors had always lived in Tennessee until they were forcibly removed by their mother to Mississippi. It will be found in the briefs of counsel for the appellee that the contention is made that these minors were wards of the Tennessee court, and consequently that the court of Mississippi should not have considered the case upon its merits, but should have re-

manded them to the Tennessee guardian. The first sentence in this opinion is as follows:

"In cases of this kind, we are bound to consider the interests of the child, as paramount to all other considerations."

Again: "The law has given to our courts the most unbounded jurisdiction over minors. Fathers may be preferred to mothers, mothers to fathers, relatives to parents, or strangers to either, for the custody and care of minors, where the interests of the child requires its exercise."

In the case of *Taylor* v. *Jeter*, 33 Ga. 195, 81 Am. Dec. 202, relied upon by appellee, a contest between the father and the maternal uncle of a child (the mother being dead), the father and mother were divorced in Alabama and the custody of the child was awarded to the mother, and after her death the uncle of the child obtained its custody and removed it from Alabama into Georgia. The father sued out *habeas corpus* proceedings to get possession of his child. The court, in speaking of the force and effect of the decree awarding the custody of the child to the mother, correctly says:

"It does not dissolve the relation of parent and child between Samuel and Oscar T. Jeter—does not bastardize the latter."

Again, it is held: "Touching the guardianship of the child, the decree settles nothing, except as between the father and mother under then existing circumstances."

In that case there was no question of the fitness or unfitness of the father to be the custodian of his minor child. The court held that the court of Alabama properly had jurisdiction over this controversy, and the child was remanded to the custody of its father.

The case of *Re Alderman*, 157 N. C. 507, 73 S. E. 126, 39 L. R. A. (N. S.) 988, was a contest between the father and mother to determine the custody of an infant son. The parties were divorced while residents of the state

of Florida, and the mother was given the custody of the
minor, with permission to the father to visit the child.
Subsequent to the granting of this divorce the mother
removed to North Carolina with the child. It was con-
tended by the father that under the Florida decree he
had a vested right in the partial custody of the child
which the court of North Carolina should respect. In
its opinion in that case the court said:

"The custody of children in cases of the divorce and
separation of their parents is a subject as delicate as
any with which courts have to deal. The good of the
child should be, and always is, the chief thing to be re-
garded, and the governing principle which guides the
judge. All other considerations sink into insignificance.
Many cases and text-writers can be cited where the prin-
ciple is announced that the physical moral, and spiritual
welfare of the child is the only safe guide in cases of
this kind; and, the courts will be guided by those sur-
roundings."

Again: "But the infant child of their union is not
property, and the father can have no vested right in the
child or its services under a decree divorcing the parents.
Such decree, as to the child, has no extraterritorial
effect beyond the boundaries of the state where is was
rendered. The child is now a citizen of North Carolina,
and, as such, peculiarly under its guardianship, and the
courts of this state will not remand it to the jurisdiction
of another state, especially where, as in this case, it is so
manifestly against the true interests of the child. . . .
'The supreme right of the state to the guardianship
of children controls the natural rights of the parent when
the welfare of society or of the children themselves
conflicts with parental rights.'"

In *Lanning* v. *Gregory,* 100 Tex. 310, 99 S. W. 542, 10
L. R. A. (N. S.) 690, 123 Am. St. Rep. 809, a contest
between the mother of the minor, who resided in Ken-
tucky, and the father of the minor, who had previously

had custody of him, who resided in Louisiana, and all three of the parties, father, mother and minor, being temporarily in Texas, the court held that it had no jurisdiction to pass upon the merits of the case.

Another case relied upon by the appellee is that of *Kenner* v. *Kenner,* 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918E, 587. In that case we quote from the opinion:

"We are of the opinion that as between the parents, parties to the litigation, the decree of the foreign court awarding the custody of the children is *res adjudicata,* subject, as between those parties, to modification only by the court that granted the decree" (citing authorities).

It is then stated: "However, we think this doctrine should be understood with the qualification that, in case of the removal of the child to another state, even within the custody of the parent to whom that custody had been awarded by the foreign decree of divorce, the courts of the state to which the removal has been affected will have the power, on a change of circumstances showing such course essential to the best interests of the child, to make a new disposition of the child."

The case of *Fox* v. *Hicks,* 81 Miss. 197, 83 N. W. 538, 50 L. R. A. 666, also relied upon by appellee, held that where the custody of a child was given to the mother, the domicile of the mother established that of the child.

The above are the authorities relied upon by the appellee.

The question as to what weight this court should give to the Tennessee decree has had our careful consideration. We think the proper rule, and that announced by the great weight of authority, is that full faith and credit should be given to this decree as adjudicating all matters therein settled at that time, but that it has no controlling effect in this state upon facts and conditions arising subsequently to its rendition, and that this court is at liberty and should award the custody of the child to the parent entitled thereto, upon proof of matters,

subsequent to the decree, which justify such award in the interest of the welfare of the child; that the paramount consideration of the court is always the best interest of the child. *Mylius* v. *Cargil*, 19 N. M. 278, 142 Pac. 918, L. R. A. 1915B, 154, and note thereto, Ann. Cas. 1916B, 941. See, also note to case of *Re Alderman, supra.*

The material facts in the Mylius case are in many respects similar to this. In that case the parents resided in Texas at the time of the divorce. Under the decree the children were not to be removed from the state of Texas. The mother obtained possession of the children, and, in violation of the Texas decree, carried them into New Mexico. She was a citizen of New Mexico when the father brought these proceedings. The court inquired into the merits of the petition, giving full faith and credit to the decree of the state of Texas as settling the facts up to the time of its rendition. It decreed, however, that the conditions had changed, and that the mother was the more suitable to have the custody of the children. By deciding the case upon its merits the court, of course, found that it had jurisdiction to inquire into the merits of the case.

In the case of *State ex rel. Nipp* v. *District Court*, 46 Mont. 425, 128 Pac. 590, Ann. as. 1916B, 256, in discussing what effect should be given the decree of a foreign state, the court, in effect, held that it should be conclusive of all matters adjudicated by the court up to the time of its rendition, and that the court would not consider the case upon its merits, "in the absence of a showing of circumstances occurring since the amendment, requiring the court of this state, in the interest of the son, to order otherwise." the amendment referred to being an amendment in the proceedings of the court of foreign jurisdiction.

It was also held in the Nipp Case that the father could not lawfully remove the minor from Nebraska, the court which had awarded the custody to the mother, under the facts of that case, but, as above pointed out, it is clearly intimated in this case that if the testimony had shown changed conditions since the Nebraska decree, and that the mother had become an unfit person to have the custody of the child, the Montana court had jurisdiction to inquire into the merits of this contention and award the custody of the child to the one best suited to care for it.

In the case of *Linch* v. *Harden* (Wyo.), 176 Pac. 156, the father and mother were divorced in Oregon while residents of that state. In the decree of divorce no provision was made for the custody of the child. Some years after this decree the father applied to the Oregon court for a modification of the decree to the extent that he be awarded the custody of the child. The mother, at that time a resident of Wyoming, appeared, and contested that proceeding through her attorney. The court modified the decree by giving the custody of the child to the father. At that time the child was in Wyoming with her mother. The father then brought *habeas corpus* proceedings in Wyoming for the possession of the child, relying upon the modified decree of the Oregon court awarding him its custody. The custody of the child was given to the mother in the lower court, and its decision affirmed by the supreme court of Wyoming. The main contention of the appellant father in the supreme court was that the judgment of the Oregon court should be held binding upon that of Wyoming, unless the conditions had sufficiently changed to justify a different judgment. In its opinion the court took jurisdiction to try this case upon its merits, despite the fact that, technically speaking, the domicile of the child continued to be that of its father, namely in Oregon, but held in that case that the domicile was with its mother in Wyoming, because at the time the Oregon judgment was rendered awarding the

custody to the father, the child was domiciled in another state. In discussing the full faith and credit clause of the Constitution in this opinion it is said:

"The decided cases are not in entire harmony on the question whether or not a judgment in a divorce action awarding the custody of a minor child to one of the parties, being temporary in character, is such a judgment as is contemplated in section 1, article 4, of the Constitution of the United States, which provides, 'Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state,' where the child at the time the judgment is rendered is domiciled in another state. But our attention has not been called to any case, nor have we found any, wherein it has been held that the courts of the state of the domicile of the child are bound by the judgment of the foreign state when it is made to appear that the conditions and circumstances of the parties have so changed since the adjudication that the welfare of the child would be promoted by a change of custody. The welfare of the child is a matter of paramount consideration, and has been so held by this court (citing authorities). In 2 Bishop on Marriage and Divorce (2 Ed.), 1189, the doctrine on the subject of the effect of the decree of a court in another state, awarding the custody of a minor to one of the parents in a divorce action, is stated as follows:

" 'Under our national Constitution, this order is plainly a record to which, if the court has jurisdiction, the same faith and effect permitted it in the state of its rendition must be given in every other state. And the true rule in the state of its rendition is that it is *res judicata* concluding the question. But it does not conclude the question for all time, since new facts may create new issues. Nor, since the relation of parent and child is a *status*, rightfully, like marriage, regulated by any state in which the parties are domicilled, does the order

in one state operate as an estoppel of all further inquiry in the courts of another state wherein the child has acquired a domicile.' ".

Strictly speaking, the domicile of the child, in the absence of a decree to the contrary, is that of its father. The child, not being *sui juris,* can have no separate domicile of its own. In contests, however, between the father and mother for the custody of the child, where the decree of divorce has given the custody to one or the other of the parents, and conditions have subsequently' arisen which render that parent an improper person for the custody of the child, and where one of the parents is a resident of the state in which the suit is pending' for a modification of the foreign decree, and the child and the other parent are within the jurisdiction of the court, we find that the courts have practically unanimously assumed jurisdiction and tried the case upon its merits. The courts have not confined themselves to the narrow techinal question as to whether or not the child is legally domiciled within the state, but have considered the paramount question of the welfare of the child. Because the custody of the child has been awarded to its mother, as is well stated in the case of *Taylor* v. *Jeter, supra,* "does not dissolve the relation of parent and child," and, as held in that case, next to the mother, who is given its custody by the decree, the father, because of the natural relation of father and child, is entitled to its custody. If the mother becomes an unfit person for the care and custody of the child, or abandons the child, the father has the natural right to care for and protect his child. When this father brings the child into the state of his residence with a view of properly caring for and maintaining it, and the mother then institutes *habeas corpus* proceedings for the custody of the child, the *bona-fide* residence of the father in this state, coupled with the natural relationship of father and child, gives this court the right to inquire into and

pass upon the merits of the question of whether or not, since the rendition of the decree of divorce, the mother has become an unsuitable and unfit person for the care and custody of the child.

While the question of the jurisdiction of the court to pass upon the merits of a controversy of this kind between husband and wife is not very much discussed in the authorities herein cited, it will be remembered that this question is always a preliminary question for the consideration of the court, and by passing upon the merits of the cases the courts thereby held that they had jurisdiction of the controversy. Other interesting cases bearing upon this discussion are *Re Bort*, 25 Kan. 308, 37 Am. Rep. 255; *Ex parte Stewart*, 77 Misc. Rep. 524, 137 N. Y. Supp. 202; *People ex rel Allen* v. *Allen*, 40 Hun. (N. Y.) 611, affirmed in 105 N. Y. 628, 11 N. E. 143; *Wilson* v. *Elliott*, 96 Tex. 472, 73 S. W. 946, 75 S. W. 368, 97 Am. St. Rep. 928; *Ex parte Boyd* (Tex. Civ. App.), 157 S. W. 254; *Woodworth* v. *Spring*, 4 Allen (Mass.) 321; note to *Seely* v. *Seely*, 12 Ann. Cas. 1059.

The cause was tried in the chancery court upon bill and answer, in which event all of the allegations in the answer must be considered as true. The court held, however, that it had no jurisdiction to try the merits of the case, because the minor was a ward of the Tennessee court. Under the authority of *Foster* v. *Allen*, *supra*, and the other cases cited in this opinion, we think the learned court below was in error.

*Reversed and remanded.*