ROBERTSON, Presiding Justice,
for the Court:
A petition for writ of habeas corpus was filed by Nancy Wyse Shoffner Garza in the Chancery Court of Washington County, Mississippi, to get custody of Charles Edward (Chucky) Shoffner, Jr., her minor son, against Charles Edward Shoffner, the father, whom she claimed was illegally detaining their son.
After a full hearing, the chancellor entered an order denying the petition for a writ of habeas corpus.
Mrs. Garza assigns as error:
I. The lower court committed reversible error in admitting into evidence, over objection, the testimony of Mrs. Della Shawblosky, Miss Pamela Shoffner and Mrs. Ethel Shoffner, in regard to the question of Appellant’s fitness to maintain custody of her son, Charles Edward Shoffner, Jr.
II. The lower court committed reversible error and was manifestly wrong in finding that a material change of circumstances had occurred justifying the denial of the writ of habeas corpus, thereby effectively modifying the original divorce decree rendered in the First Judicial District Court of Caddo Parish, Louisiana, in regard to the custody rights of the parties.
A judgment of final divorce was entered by the Louisiana court on May 4, 1977, *398 granting Shoffner a divorce from Nancy Wyse Shoffner. The Louisiana court also awarded the permanent custody of the minor children, Melanie Shoffner, Pam Shoff-ner, and Charles Shoffner, Jr., to Mrs. Shoffner, and provided that Shoffner pay $300 per month child support to her.
During the summer of 1978, 14-year-old Pam Shoffner, with her mother’s permission, came to live with her father in Green-ville, Mississippi. Pam testified at the hearing on the petition for writ of habeas corpus that the reason she came to live with her father was that Bobby Garza, the man that her mother was living with, would come over to their home drunk and get mad at her mother and hit her and push her into a closet and throw knives at the closet door, and that one night when this happened he pulled the phone off the wall and threw it at Pam, hitting her on the back. After that incident, Garza told Pam to call her grandfather and her dad and to leave. In response to her telephone call, her father flew to Louisiana and picked her up. Pam further testified that Garza would come over and live with her mother about 3 days a week before they were married, and that about 2 days a week her mother would go over to Garza’s home and live with him and leave the children to fend for themselves.
In June, 1979, appellant sent Chucky to appellee to spend the summer with him. When appellee failed to return Chucky to her, she made two trips to Greenville to pick him up. Both trips resulted in altercations with appellee or members of his family. On the second trip Chucky was riding his bike in the neighborhood and when his mother approached him he ran into his grandmother Shoffner’s home. He was forcibly put into his mother’s car by his older sister, Melanie, who still lived with her mother. Appellant was stopped at the state line after a high-speed chase and ordered to surrender custody of Chucky.
It was after this episode that the petition for writ of habeas corpus was filed. In rendering his opinion, the chancellor said:
“My question is whether the facts in this case do constitute a material change.
Now, the changes that I noted are first of all, that there has been this illicit relationship for an extended period of time prior to this marriage to Mr. Garza. This was. known to the children and continued over a substantial period of time depending on the witness — it varied from three months to approximately a year, as I recall the testimony, but it was unquestionably for a substantial period of time that she was absent from the home, known to be at his home overnight, leaving her children there at her home. Then the occasions when he would be at her home where they were oftentimes in the same bedroom overnight.
The second change that I note is that it was an agreed change of custody of the sister, Pam, and she was given to her father.
The third change is that there is testimony of marital discord of varying severity, depending on which witness was testifying. This appears to have existed for a substantial period of time during the course of the subsequent marriage.

The question is whether the changes to which I made reference constitute sufficient material change to justify refusal of the writ. Now, subsequent to the illicit relationship the petitioner has married the man and apparently is attempting to establish a substantial home. Whether this is sufficient recompense for the previous misconduct and [demonstrates] that she has been sufficiently [rehabilitated] to justify overlooking her previous conduct is a difficult matter to pursue.
This child who is the subject of this writ is nine years old. Obviously from the testimony — and I did not permit the child to testify for obvious reasons — this child has a good relationship with the father and with the sister that was living with the father by agreement. I find under all the circumstances that there has been a material change and that it is in the best interest of the child that the writ be denied.”
*399 The two assignments of error are interrelated and will be discussed together. The appellant contends that the appellee should not have been allowed to show any material change of circumstances in a hearing on a petition for writ of habeas corpus since this could result in a modification of a Louisiana divorce decree, which was required to be given full faith and credit by a Mississippi court.
In Brashers v. Greene, 377 So.2d 597 (Miss.1979), this Court said that there are at least three procedures available to test and decide the rightful custody of minors. These procedures are outlined in MCA § 93-5-23, § 93-11-65, and § 11-43-1 (1972). In the case at bar, the petition was brought under § 11-43-1, the regular statute on habeas corpus. In Brashers, we held that a Mississippi court on a petition for writ of habeas corpus could conduct a full hearing to determine whether there had been a material change of circumstances and that for the best interests of a minor child another state’s decree of divorce and custody could be modified. This was consistent with our holding in Haynie v. Hudgins, 122 Miss. 838, 85 So. 99 (1920), wherein we said:
“The question as to what weight this court should give to the Tennessee decree has had our careful consideration. We think the proper rule, and that announced by the great weight of authority, is that full faith and credit should be given to this decree as adjudicating all matters therein settled at that time, but that it has no controlling effect in this state upon facts and conditions arising subsequently to its rendition, and that this court is at liberty and should award the custody of the child to the parent entitled thereto, upon proof of matters, subsequent to the decree, which justify such award in the interest of the welfare of the child; that the paramount consideration of the court is always the best interest of the child. [Citations omitted].

“When this father brings the child into the state of his residence with a view of properly caring for and maintaining it, and the mother then institutes habeas corpus proceedings for the custody of the child, the bona-fide residence of the father in this state, coupled with the natural relationship of father and child, gives this court the right to inquire into and pass upon the merits of the question of whether or not, since the rendition of the decree of divorce, the mother has become an unsuitable and unfit person for the care and custody of the child.” 122 Miss, at 857-58, 85 So. at 102-03.
Haynie was also followed in Logan v. Rankin, 230 Miss. 749, 94 So.2d 330 (1957).
In Neal, et al. v. Neal, 238 Miss. 572, 119 So.2d 273 (1960), this Court said:
"This State has adopted the majority rule that in habeas corpus proceedings a prior decree of custody is not binding upon proof of circumstances and conditions arising since the date of its rendition, which show that the party awarded custody thereby is unfit to exercise such right or has forfeited it. The best interest and welfare of the child is the prime consideration. The decision here is confined to a situation where a parent has invoked the aid of a court other than that which made the initial custodial decree awarding her custody, and the defendants 'were not parties to that decree.” 238 Miss, at 577-78, 119 So.2d at 275. (Emphasis added).
In Neal, the mother was awarded custody of the children in a final decree of divorce rendered by the Chancery Court of Washington County. The mother subsequently filed a petition for writ of habeas corpus in Sunflower County, seeking to regain custody of the children from the children’s paternal grandparents and aunt.
The limitation in Neal would not apply to the case now before us because the case at bar involves a Louisiana decree of divorce. Where the best interests of minor children are involved, the parties litigant should not be limited to, nor absolutely required to return to, the foreign court of their residence at the time of their divorce for relief.
*400 The chancellor had jurisdiction and was correct in conducting a full hearing in this habeas corpus proceeding in order to determine whether there had been a material change of circumstances affecting the welfare and best interests of Chucky, the minor son. Shoffner could also have come into a Mississippi court and secured a change of custody upon proving a material change of circumstances under the provisions of MCA § 93-11-65 (1972).
The chancellor was correct in denying the petition for writ of habeas corpus, and thereby in effect modifying the Louisiana Court’s decree granting custody of Charles Shoffner, Jr., to Nancy Wyse Shoffner.
AFFIRMED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.