600 So.2d 951 (1992)
Diana Boston BUBAC
v.
Laura BOSTON.
No. 91-CA-0147.
Supreme Court of Mississippi.
May 20, 1992.
*952 John E. Ellis, Vicksburg, for appellant.
Wren C. Way, Way Field & Bodron, Vicksburg, for appellee.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
The issue of wrongful detention of two minor children is the subject of this appeal from the County Court of Warren County.
Diana D. Boston Bubac, the natural mother, had filed a habeas corpus petition alleging that her former mother-in-law, 70-year-old Laura Boston, had retained custody of the children in violation of a Kentucky circuit court divorce decree.[1] The county court judge dismissed Diana's petition, and she appealed.
This Court holds that the Kentucky divorce decree vested custody of the children in their mother  not their paternal grandmother. Absent proof that giving full faith and credit to the divorce decree would be adverse to the children's best interest, this Court must reverse the county court judge's refusal to issue a writ.

A. Detailed Background
In 1989, Diana D. Boston enlisted in the United States Army; her husband, Steve, had enlisted earlier. Diana's mother-in-law, Laura Boston of Vicksburg, cared for the children until either she or Steve could resume caring for them.[2]
In November 1989  upon completing her basic training and an assignment with the military police  Diana resumed caring for the children at Fort Knox, Kentucky. Steve was stationed in Korea at the time.
By the summer of 1990, Steve had returned from Korea  after which time he and Diana experienced marital difficulties. They transported the children to Vicksburg so that Laura could care for them while they attempted to resolve their difficulties; their attempts to resolve them failed. Later that year, they filed a joint petition for *953 "Dissolution of Marriage" along with a "Separation Agreement" (hereinafter "Agreement") in the Hardin Circuit Court in Kentucky. In January 1991, the circuit court judge issued his final decree through which he dissolved Diana and Steve's marriage and incorporated the terms of the Agreement into the dissolution decree. Pursuant to the terms of the Agreement:
Respondent, Steve L. Boston, and Petitioner, Diane D. Boston, shall have the joint care, custody, and control of the infant children, with said infant children residing with Respondent until such time as Petitioner leaves the military and is fully stabilized in her environment as a civilian. At that time, the children shall commence to live with Petitioner, and Petitioner, therefore, will become a possessory parent. It is understood that the children may visit for short periods not to exceed two weeks with Respondent's mother, independent of the custody or visitation provisions in this agreement.
The Army meanwhile transferred Steve to Ft. Hood, Texas, and then to Saudi Arabia. The Army refused to permit him to take the children along. He therefore left the children with his mother, Laura.
Diana, who eventually married Robert Bubac, continued her military service at Ft. Knox. She also succeeded in securing permission from the Army to resume custody of the children. But when Diana attempted to retrieve the children from Vicksburg, Laura refused to give them up. Laura testified: "I told her [Diana] she's welcome to come anytime  she had visitation for two weeks and holidays and whatever." Diana, however, revealed that Laura would not even permit her to visit the children or speak with them via telephone.
Diana consequently filed a habeas corpus petition in the County Court of Warren County against Laura  alleging that she was wrongfully detaining the children. After a hearing, the judge ruled in favor of Laura, whom he found to be "a fit, suitable and proper person to have custody of the minors." The judge opined that "continuation of such custody is in the best interest of the children." When asked for his opinion regarding Diana's fitness to be the children's custodian, the judge responded: "I did not entertain this[;] I did not make a ruling that she was morally unfit, and I do not now so decide that."
Diana appealed.

B. The Issues
Diana presented two issues for analysis. For brevity's sake, these issues have been consolidated into the following:

Whether the county court judge erroneously denied Diana's petition for writ of habeas corpus?

II. ANALYSIS

A. The Writ of Habeas Corpus and Jurisdictional Considerations

1.
This Court has repeatedly held that the county court has subject-matter jurisdiction over habeas corpus proceedings. See, Talley v. Womack, 249 Miss. 773, 163 So.2d 742, 744 (1964) (citing cases). The judge may not "by special order prolong its powers and jurisdiction." Id.
A habeas corpus proceeding may be convened by a judge of the chancery, circuit, or Supreme Court. Miss. Code Ann. § 11-43-7 (1972). "When an application in habeas corpus has been made to a county judge, or has been made returnable before him, he acts not as a county court [judge], but with all the power and authority of a circuit judge or chancellor; wherefore, an appeal [must] be taken direct to this Court under [statutory law]." Cole v. Cole, 194 Miss. 292, 295, 12 So.2d 425, 426 (1943); see also Wade v. Lee, 471 So.2d 1213, 1215 (Miss. 1985) (citing cases and Miss. Code Ann. § 9-9-23 (1972)); Nance v. Vick, 318 So.2d 889, 890 (Miss. 1975); Miss. Code Ann. §§ 11-43-53 & -55 (1972).
Finally, venue of the habeas corpus proceeding is in the county where the children allegedly are being wrongfully detained. Logan v. Rankin, 230 Miss. 749, 759, 94 So.2d 330, 335 (1957).

*954 2.

The common-law writ of habeas corpus  also known as the "Great Writ"  "extends to all cases of illegal confinement or detention by which any person is deprived of his liberty, or by which the rightful custody of any person is withheld from the person entitled thereto, except in cases expressly excepted." Miss. Code Ann. § 11-43-1 (1972).[3] The writ is a "civil, as distinguished from a criminal, remedy or proceeding." 39 C.J.S. Habeas Corpus § 3, at 461 (1976).
With regard to proceedings instituted to resolve the issue of alleged wrongful detention of children, as distinguished from detention of individuals under criminal process, Mississippi jurisprudence has followed what seems at first impression to be two schools of thought. The first school of thought  reflected in this Court's opinions issued primarily in the former half of this century  held that a judge is narrowly empowered "to either set the child at liberty or award its custody to the [entitled] party." See, e.g., Gray v. Gray, 121 Miss. 541, 545, 83 So. 726, 726 (1920). The judge is not empowered "to direct the manner in which [the custodial] party shall exercise his lawful authority over such child, or to direct that he shall surrender ... the custody ... to another person," for example, due to a material change in circumstances. Id., quoted in Yarbrough v. Dunnam, 130 Miss. 669, 94 So. 892, 892 (Miss. 1923).
In the latter half of this century, this Court continued to recognize the writ of habeas corpus as a legal remedy in custody disputes. However, the remedial nature of the writ took on another dimension  an equitable dimension  to which this Court referred in Neal v. Neal as the "majority rule":
If, [upon issuance of] the decree granting a divorce and awarding the custody of a child, the circumstances have changed, a habeas corpus court may award the custody to the other parent or to a stranger, if the welfare of the child demands it; and in the exercise of such discretion, the court may look to the circumstances relating to the child's ordinary comfort, contentment, and intellectual and moral development.
238 Miss. 572, 119 So.2d 273, 275 (Miss. 1960).[4] The Court noted the public policy considerations which led to promulgation of this rule: (1) a material change in circumstances, (2) the welfare of the child, (3) "the position and responsibility of the state as parens patriae," and (4) "the fact that the parties to [habeas corpus] proceedings [may not be] the same as in the divorce action." Id. (citing 39 C.J.S. Habeas Corpus § 46, at 586 n. 57 ([1976])). In short, the "best interest and welfare of the child is the prime consideration." Id. The Neal Court confined the scope of its opinion to a "situation where a parent has invoked the aid of a court other than that which made the initial custodial decree awarding [the parent's] custody, and the defendants were not parties to that decree." Id.; see also Mixon v. Bullard, 217 So.2d 28, 30 (Miss. 1968); Hinman v. Craft, 204 Miss. 568, 575, 37 So.2d 770, 770-71 (1948). If the parties in the habeas corpus proceeding and original custody proceeding are identical, the chancery court in which the original custody decree was issued has continuing and exclusive jurisdiction to modify the decree upon a show of proof of changed circumstances. "[A]ny other court is without jurisdiction to modify the original court's decree." Reynolds v. Riddell, 253 So.2d 834, 836-37 (Miss. 1971); Ladner v. Ladner, 206 So.2d 620, 624 (Miss. 1968).
More recently, this Court relaxed the jurisdictional restriction placed upon the judge presiding over a habeas corpus proceeding which involves the same parties involved in the original custody proceeding:

*955 Generally, when prior proceedings conducted by another court determined the custody of an infant, the prior judgment must be regarded as final, and it is not subject to attack by subsequent habeas corpus proceedings. However, the habeas corpus court can disregard the prior decree where circumstances and conditions arising since the decree show that the party awarded custody is unfit to exercise or has abandoned custody of the child.
Smith v. Watson, 425 So.2d 1030, 1032 (Miss. 1983); see Pearson v. Pearson, 458 So.2d 711, 713 (Miss. 1984) (judge may modify custody decree issued through another court when urgent circumstances warrant such action). The burden of proof which must be met before the custody decree may be modified is higher than that which must be met in the ordinary modification proceeding held in the chancery court with original jurisdiction.
In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child welfare; and (3) that the child's best interests mandate a change of custody. See Smith v. Todd, 464 So.2d 1155, 1157 (Miss. 1985); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983).
In the habeas corpus proceeding, the non-custodial party "must go further" and "affirmatively" prove that, since issuance of the custody decree, "the custodial parent has abandoned the child or has otherwise become altogether unfit to continue to exercise custody over the child." Wade v. Lee, 471 So.2d 1213, 1216 (Miss. 1985);[5]see also Mixon v. Bullard, 217 So.2d 28, 30 (Miss. 1968).
The foregoing may not be construed to mean "that the habeas corpus court acquires continuing jurisdiction over the child or his or her custody." Wade, 471 So.2d at 1217 (citing Watson, 425 So.2d at 1035). Jurisdiction is only "temporary"; that is, modification by the judge in a habeas corpus proceeding remains in effect only until a modification proceeding is held in the chancery or other court with original jurisdiction.[6]Id.

B. The Law Applied to the Facts
Diana filed the petition for a writ of habeas corpus seeking to regain custody of her children who, she contended, were being wrongfully detained by her former mother-in-law. The county court judge unjustifiably denied her petition.
This Court construes the Separation Agreement  incorporated into the divorce decree  as vesting joint custody of the children in both Diana and Steve. The Agreement vests possessory custody in Steve until such time when he is incapable of maintaining "care, custody, and control" of the children or when Diana is capable of maintaining "care, custody, and control." This Court's construction of the Agreement is particularly supported by an "Order" issued on March 23, 1992, by the Hardin Circuit Court definitively vesting custody of the children in Diana.
Both Laura and the county court judge erroneously construed the Agreement and concluded that, once Steve was transferred to Korea and was incapable of maintaining "care, custody, and control" of the children, he (Steve) could unilaterally decide the fate of the children. In other words, Laura and the judge deduced that, because the Army would not permit Steve to take the children with him to Korea, Steve could transfer his right to custody of *956 the children to whomever he selected  in this case, to his mother, Laura. This Court cannot accept such logic.[7]
Absent affirmative proof that, for example, Diana was unfit to maintain "care, custody, and control" of the children, the county court judge should have given full faith and credit to the Hardin Circuit Court decree. Haynie v. Hudgins, 122 Miss. 838, 85 So. 99, 102 (1920) (holding that full faith and credit should be accorded foreign court decrees absent proof that petitioner is "unsuitable and unfit ... to have custody of the child"), cited in Neal, 119 So.2d at 275-76. The record reveals no proof or allegation of "unsuitability" or "unfitness" or any other valid reason to temporarily divest Diana of her right to have custody of her children; indeed, the judge did not even "entertain" such issues.
This Court therefore is obligated under State law to give full faith and credit to the Hardin Circuit Court decree. Diana shall have custody until otherwise ordered by the Hardin Circuit Court or other court of proper jurisdiction. The order of the county court judge is reversed, and custody of the children is awarded to Diana.

III. CONCLUSION
The foregoing is consistent with the principle which Justice Sullivan iterated not long ago: "It is presumed that the best interest of the child will be preserved by his or her remaining with the surviving parent" as opposed to a grandparent. Rutland v. Pridgen, 493 So.2d 952, 954 (Miss. 1986) (reversing and rendering decision to award custody of children to maternal grandmother and thus deprive surviving parent of custody). "Simply stated, the natural parent is entitled to custody, as against a third party, unless one of the [following] conditions is clearly proved": (1) The parent abandoned the children; (2) The parent's immoral conduct adversely affects the children's interests; or (3) The parent is unfit to have custody. Id. (citing numerous cases). The record contains no evidence of abandonment, immorality, or unfitness. The children must therefore be returned to their mother, Diana.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
DAN M. LEE., P.J., concurs in result only.
BANKS, J., concurs by separate written opinion.
BANKS, Justice, concurring:
I concur in the result reached by the majority, but not its reasoning.
The majority opinion does not quote the language of the agreement being construed. As I read it, the only quote is on page 2 and that quote does not speak to Steve being "incapable" of care, custody and control. Nor does it speak to Diana's becoming capable of such. When the agreement was entered, they were both in the military and the children were with Laura. The agreement says specifically that Diana should have physical custody when she "leaves the military and is fully stabilized in her environment as a civilian." Steve never transferred his "right of custody". Steve used his mother to exercise his *957 right of physical custody. There is nothing in the opinion which would indicate that this was not the contemplation of the parties. Indeed, they had appointed Laura guardian. In my view, Diana's remedy was by way of modification of the decree. Apparently, she has successfully pursued that remedy. I would reverse in light of that new development rather than reverse on the grounds stated here.
NOTES
[1] The children's father, Steve L. Boston, is not a party in this case.
[2] Diana testified that, prior to enlisting, the Army required her and Steve to sign a "Statement of Understanding" certifying that they have appointed a guardian to care for their children during their term of enlistment. The record contains a Hardin (Kentucky) Circuit Court order reflecting the guardianship appointment of Diana's mother-in-law.
[3] "The privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion, the public safety may require it, nor ever without the authority of the legislature." Miss. Const. art. 3 § 21.
[4] Interestingly, the Neal Court cited a forty-year-old case to support its adherence to the "majority rule." See Haynie v. Hudgins, 122 Miss. 838, 85 So. 99 (1920) (holding that "the paramount consideration [in a habeas corpus proceeding] is always the best interest of the child").
[5] Modification of custody in a habeas corpus proceeding held in a court without original jurisdiction may also entail modification of visitation and child-support payments "as may be appropriate." Wade, 471 So.2d at 1217.
[6] The "Uniform Child Custody Jurisdiction Act" has no application to this case because it involves neither an "initial" proceeding to determine child custody nor a subsequent proceeding to determine whether modification is warranted. This case simply involves an alleged wrongful detention. See generally Miss. Code Ann. ch. 23 (Supp. 1990).
[7] Laura notes that Diana should be without right to institute any custody-related proceedings so long as the children's father  stationed in Korea  is incapable of being joined as a necessary party. See Appellee's Brief at 1 (citing "Soldier's and Sailor's Civil Relief Act of 1940," 50 U.S.C.App. §§ 501, 510 & 521 (date). The "Soldier's and Sailor's Civil Relief Act" has been amply discussed by this Court in other cases. See, e.g., Wilson v. Butler, 584 So.2d 414, 416-18 (Miss. 1991); O'Neil v. O'Neil, 515 So.2d 1208, 1211-12 (Miss. 1987). In short, the Act provides that a judicial proceeding, in which a military serviceperson is a defendant or plaintiff, may be stayed upon application by the judge or by the serviceperson. 50 U.S.C.App. § 521.

Examination of relevant law reveals no support for Laura's contention. Steven is not a necessary party; he is neither the plaintiff nor defendant. Indeed, neither Steven nor the county court judge applied for a stay of the habeas corpus proceeding  which was instituted by a custodial parent, Diana, against a non-custodian, Laura, who has no right under law or under the Kentucky divorce decree to detain the children.