NORRIS, Judge.
Quality Transmission Inc. (“QTI”) sued Frankie Curry for auto repairs of $638.29 and prayed for a writ of sequestration, which was issued. Ms. Curry reconvened, urging the sequestration was wrongful and praying for damages. After a bench trial, the district court found that there was a dispute over QTI’s repairs, thus making the sequestration improper. The court therefore dissolved the writ and awarded Ms. Curry damages for inconvenience and humiliation, rental costs and attorney fees, together with all court costs. On the principal demand, however, the court found that QTI’s repairs were not faulty; QTI received a credit for the full amount of its unpaid bill, $638.29.
QTI now appeals, urging the trial court erred in finding that sequestration was improper, dissolving the writ and awarding damages on the reconventional demand. The record supports the finding that QTI’s repairs of December 6,1989, which spurred this litigation, were not faulty; however, the record does not support the finding that Ms. Curry had a bona fide dispute with QTI over the quality of the repairs. We therefore reverse the portion of the judgment that grants relief on the recon-ventional demand; Ms. Curry’s claims are dismissed. The judgment on the principal demand is affirmed and rendered.

Factual context

Ms. Curry, who lives in Monroe, owned a 1982 Grand Prix that was in need of repair. Her boyfriend, Donnie Johnson, was assisting her with the maintenance. A distant in-law of Johnson’s, Robert Sikes, had recently opened QTI, a repair shop in Winns-boro, and Johnson brought the car there in April 1989. QTI installed a rebuilt long block engine at a cost of $1,191.31. The engine had a 120-day/12,000-mile warranty, whichever came first. Right after the engine was installed, Sikes could tell that it-was “running warmer than I like,” so he planned to install a new thermostat. A *95 new thermostat was in fact installed about a week later, when Johnson returned the car to complete some air conditioner work. According to Sikes, after these repairs he did not hear from Johnson or Ms. Curry for quite a while.
According to Johnson and Ms. Curry, however, the April repairs were unsatisfactory. The car still overheated badly, sputtered and wanted to die. They testified that Sikes told them the car would run rough for a couple of weeks but they should keep on driving it. Sikes admitted telling them the car would run rough until the new thermostat was installed. Johnson and Ms. Curry testified that the car did not improve, so they began phoning Sikes once or twice a week every week to complain, but Sikes would never return their calls. Sikes and his wife, who usually answered the phone, denied receiving any such barrage of calls, but he admitted that Johnson phoned once in July to say the car was still running hot and he (Johnson) was going to install a new water pump. Johnson testified that he performed various work on the car, such as installing a new water pump, but nothing seemed to help.
By late November, according to Johnson and Ms. Curry, the car was still exhibiting the old problems and it now had no power. Johnson called Sikes, who promptly towed the car back to QTI for further repairs. Sikes testified this was the first he had heard from them since July, and if they had complained sooner, he would have taken some action.
Sikes, who was accepted as an expert in auto mechanics, testified that when he checked the car in November he found that someone had improperly installed a water pump. The tension bracket was bent, so the alternator belt would not stay in place and the pump could not function properly. Because of extensive overheating the timing cover, heads and gaskets had been damaged; these had to be repaired or replaced at a cost of $638.29. Sikes felt that these damages occurred because of the improperly installed water pump, not because of any defect in the rebuilt engine.
On December 6 Johnson went to QTI to pick up the repaired Grand Prix. He was carrying a signed, blank check and instructions from Ms. Curry to pay if everything was all right; Ms. Curry testified that she understood she would be charged for these repairs. When he was presented with the bill, Johnson said he thought this work should be covered by the 12,000-mile warranty; Sikes had told him the 120-day warranty was expired. After Johnson refused to pay, Sike's asked him to leave the car until their differences were settled. Johnson did not argue with Sikes, but used a spare key and drove off without his permission.
Sikes phoned Ms. Curry the next day, before she had driven the car. At trial she admitted that she offered to pay the whole bill, half now and half in a few days, but Sikes would not accept this. Sikes testified that she offered to pay him a little each month, an arrangement he could not accept. He filed this suit the next day, December 8, and the car was promptly seized from Johnson’s place of work in Monroe.
A few weeks later Ms. Curry furnished a bond and the car was released from sequestration. Because the car would still not run, she had it towed from the impound lot to Twin City Pontiac, where some work was performed. Ms. Curry was not allowed to testify about the nature of this work, but Twin City’s invoice was admitted in evidence. As noted, the trial court found that this work was not related to QTI’s repairs of December 1989; in fact, QTI’s repairs were not proven to be faulty.

Applicable law

Any person operating a garage or other place where automobiles or other machinery are repaired, or parts for them are made or furnished, has a privilege upon the automobile or other machinery for the amount of the.cost of repairs made, parts made or furnished, and labor performed. The privilege is effective for 120 days if the car is removed from the repairman’s premises. La.R.S. 9:4501A; Dixie Trucks, Inc. v. Davis, 530 So.2d 107 (La.App.2d Cir.1988); McCann v. George, 238 So.2d 197 *96 (La.App. 1st Cir.), writ ref'd 256 La. 883, 239 So.2d 541 (1970). The privilege may be enforced by writ of sequestration. Margot, Inc. v. Pearson, 336 So.2d 280 (La.App. 1st Cir.), writ denied 339 So.2d 21 (1976); Thompson v. Warmack, 231 So.2d 636 (La.App. 3d Cir.1970). The repairman also has the right to retain the car until the bill is paid. La.C.C. art. 3217(2); Babington v. Stephens Imports, Inc., 421 So.2d 275 (La.App. 4th Cir.1982); Thompson v. Warmack, supra. However, the repairman does not have the right to sequester the car when there is a bona fide dispute over the quality of the repairs. McCann v. George, supra. A bona fide dispute is present when the repairs are substandard and the repairman is so informed. Dixie Trucks, Inc. v. Davis, supra; McCann v. George, supra. A disagreement as to the cost of repairs generally does not make sequestration wrongful unless the owner has tendered the undisputed portion. Babington v. Stephens Imports, Inc., supra; see also Margot, Inc. v. Pearson, supra.
The trial court’s findings of fact are accorded great weight and will not be disturbed unless plainly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).

Discussion

QTI urges on appeal that the sequestration was not wrongful because there was no dispute about the need for or the quality of the repairs performed in December 1989. Ms. Curry counters that the long history of complaints from herself and Johnson placed Sikes on notice that his repairs were defective, and there was indeed a dispute when Johnson came for the car on December 6.
As for the lengthy history between the parties from April to November 1989, it is sufficient to say that these complaints did not arise from repairs for which the writ of sequestration was issued. While Ms. Curry and Johnson may have communicated their displeasure with the April repairs (the trial court found they did so “at least twice,” or far less than they alleged), we must focus on the relation between the April work and the December work.
The December work consisted of repairing or replacing the timing cover, heads and gaskets that had been damaged by excess heat. Sikes testified that someone other than himself had installed a water pump improperly, leading to the damage. Sikes’s mechanic, Keith Knox, testified that when the rebuilt engine was installed in April, Johnson actually asked him to leave in the old water pump. Both Ms. Curry and Johnson admitted that Johnson installed at least one new water pump over the summer, and Johnson told Sikes he (Johnson) intended to do so. Given these facts, we cannot find that the December work was necessitated by any of QTI’s April work. The validity of QTI’s sequestration depends solely on situation surrounding the December work.
The record is quite clear that by December the warranty for the April work had expired. Ms.. Curry admitted she was aware of this and expected to pay; only Donnie Johnson felt that the December work should be covered. It is also clear that when Johnson came for the car on December 6 he did not contend that the latest work was substandard; he had not yet driven the car. Further, when Sikes called Ms. Curry the next day, she did not assert that the latest work was substandard; she had not yet driven the car. In fact, her conduct (sending Johnson with a blank check and offering to pay Sikes in installments) shows a resolve to pay the whole bill.[1] The evidence simply does not show that Ms. Curry or Johnson ever advised Sikes that the December work was defective.
Thus the trial court found that Ms. Curry “failed to prove that the repairs performed in December were of poor workmanlike quality” and awarded QTI the full value of its work. The court refused to award Ms. Curry the cost of subsequent repairs at Twin City Pontiac, which primarily overhauled the carburetor and adjusted the tim *97 ing. QTI’s December work was not defective. There was no basis for Johnson or Ms. Curry to dispute its quality.
The only “dispute” was Johnson’s unreasonable contention, contrary to the wording of the warranty and to Ms. Curry’s understanding, that the December work should be under the prior warranty. This is not the kind of dispute that will make sequestration wrongful. In McCann and Dixie Trucks, supra, the disputed repairs were easily found to be “worthless,” so those cases do not govern here. The trial court committed error by dissolving the writ and awarding damages for wrongful sequestration.
Much of Ms. Curry’s brief lauds the judgment on her reconventional demand as sending a message to repairmen for their “highhanded actions” in “throwing their weight around to enforce payment.” Br., 10. We would observe that the most highhanded conduct in this case was that of Ms. Curry’s friend, Donnie Johnson. He appears to be the person who instructed Sikes to re-use the old water pump when the rebuilt engine was installed in April, but later put in a water pump (as well as a thermostat) improperly. In December he raised an untenable claim on the warranty and defeated Ms. Curry’s intention to pay the bill. Worst of all, he disturbed QTI’s right to retain possession of the car until the bill was paid. La.C.C. art. 3217(2); Thompson v. Warmack, supra. While we sympathize with the defendant’s inconvenience in trying to repair this trouble-ridden Grand Prix, we feel that Donnie Johnson’s actions precipitated the seizure. By contrast, QTI performed work on the car and was not paid; the work was not shown to be substandard. In this situation the law grants a privilege which may be enforced by writ of sequestration. La.R.S. 9:4501. There was nothing wrongful in QTI’s conduct.
For these reasons, the portion of the judgment granting relief on Ms. Curry’s reconventional demand is reversed and that demand is dismissed; the writ of sequestration in favor of QTI is reinstated. The portion of the judgment in favor of QTI on its principal demand is affirmed. All costs, trial and appellate, are assessed to Ms. Curry.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.

. Had Sikes accepted Ms. Curry’s offer to pay the bill in installments, he might have waived his right to assert the privilege. See Babineaux v. Grisaffi, 180 So.2d 888 (La.App. 3d Cir.1965).