LARRY E. STANCIL, JR. AND WIFE, MARY JANE STANCIL v. MICHAEL W. BROCK AND WIFE, TERESA LYNN BROCK

No. 9119DC1276

(Filed 2 February 1993)

1. **Adoption or Placement for Adoption § 60 (NCI4th)— child placed with plaintiffs for possible adoption—child not "left with" plaintiffs—applicability of Interstate Compact on the Placement of Children**

Because the record established that defendants sent their child to plaintiffs in North Carolina as a preliminary to a possible adoption by plaintiffs and did not simply "leave the child with" plaintiffs, the Court rejects plaintiffs' argument that Article VIII(a) of the Interstate Compact on the Placement of Children excluded this case from the operation of the Compact. N.C.G.S. § 110-57.1, art. VIII(a).

**Am Jur 2d, Adoption §§ 32-34, 48 et seq.**

**2. Adoption or Placement for Adoption § 39 (NCI4th)— child sent by parents to plaintiffs in North Carolina for adoption—no order of adoption—control over child still held by parents**

Because defendants are persons who sent their child to North Carolina for possible adoption by plaintiffs, they are the "sending agency" as that term is used in Article II(b) of the Interstate Compact on the Placement of Children, and, as such, pursuant to Article V, they retain jurisdiction, that is, authority or control, over the child until his adoption, which has not occurred. N.C.G.S. § 110-57.1, art. II(b).

**Am Jur 2d, Adoption §§ 32-34, 48 et seq.**

Appeal by plaintiffs from order entered 2 August 1991 in Cabarrus County District Court by Judge Jerry C. Martin. Heard in the Court of Appeals 3 December 1992.

*Knox, Knox & Freeman, by Bobby L. Bollinger, Jr., for plaintiff-appellants.*

*Legal Services of Southern Piedmont, Inc., by Vernon J. Cahoon, for defendant-appellees.*

GREENE, Judge.

Plaintiffs appeal from an order entered in open court 2 August 1991, dismissing with prejudice plaintiffs' custody action against defendants.

The facts pertinent to this appeal are as follows: On 28 October 1990, a male infant was born in Richmond, Kentucky. The child's birth parents, defendants Teresa and Michael Brock, are residents of Berea, Kentucky. Defendants have two other children, ages eight and five. Defendants were having marital problems and were considering divorce at the time Teresa Brock learned that she was pregnant with the child. They decided to place the child for adoption with plaintiffs Mary Jane and Larry Stancil of Cabarrus County, North Carolina. Defendants' contacts with plaintiffs were arranged by defendants' neighbor in Kentucky, Debra Bryant, who is a cousin of Mary Jane Stancil.

Defendants placed the child utilizing the procedures for the private, or independent, placement of children across state lines set forth in the Interstate Compact on the Placement of Children

STANCIL v. BROCK

[108 N.C. App. 745 (1993)]

(the Compact), to which both North Carolina and Kentucky are party states. *See* N.C.G.S. § 110-57.1 *et seq.* (1991); K.R.S. 615.030 *et seq.* (1992). With the help of the Kentucky Compact Administrator, defendants on 7 September 1990 executed an "Interstate Compact Placement Request" stating their intent to place their then-unborn child with plaintiffs in North Carolina. On 2 November 1990, several days after the child's birth, defendants executed North Carolina consent to adoption forms. The forms stated that the parents' consent to adoption could not be revoked after entry of an interlocutory decree or final order of adoption, or, pursuant to then-existing N.C.G.S. § 48-11(a)(3), after three months from the giving of the consent.

Plaintiffs traveled to Kentucky on 28 October 1990, after being informed by Debra Bryant that Teresa Brock was in labor. Approximately seventeen hours after the child's birth, he was transported to Berea, Kentucky, where he lived temporarily with Mary Jane Stancil's brother and sister-in-law, Robert and Vickie Short. On 9 November 1990, plaintiffs, after obtaining approval to do so, took the child from Kentucky and brought him to their home in Cabarrus County, North Carolina. Although the record does not specifically reflect it, plaintiffs apparently filed a petition for adoption of the child in Cabarrus County; however, no interlocutory or final order of adoption has been entered.

During late January, 1991, a North Carolina social worker informed plaintiffs that defendants might attempt to revoke their consent to the adoption. On 24 January 1991, plaintiffs filed a complaint in Cabarrus County District Court seeking temporary and permanent custody of the child. The trial court entered an *ex parte* emergency order giving plaintiffs temporary custody of the child. On 28 January 1991, the order and complaint were served on defendants, and defendants filed revocation of consent to adoption forms with the Cabarrus County Clerk of Superior Court the same day. Defendants, in their answer to the complaint, moved to dismiss plaintiffs' custody action. On 7 March 1991, defendants filed an action against plaintiffs in Kentucky entitled "Petition For Immediate Entitlement to Custody," and on the following day filed a "Motion for Assumption of Jurisdiction and for Temporary Custody." The Kentucky court "overruled" the motion; however, defendants' action was not dismissed.

On 2 August 1991, the Cabarrus County District Court, after hearing on defendants' motion to dismiss plaintiffs' custody action, found that the child lived "from birth" in Kentucky with Robert and Vickie Short (Mary Jane Stancil's brother and sister-in-law) until 9 November 1990, at which time plaintiffs transported the child to North Carolina. The court also found that defendants are the persons who caused the child to be sent from Kentucky to North Carolina for placement. The court concluded that defendants are the "sending agency" as that term is used in the Compact, and that therefore, pursuant to Article V of the Compact, defendants retained statutory jurisdiction over the child to effect or cause his return to Kentucky. The court concluded that, as a result, it had no jurisdiction to hear the custody action. The court also concluded that it lacked jurisdiction to hear the custody action because under the Uniform Child Custody Jurisdiction Act, N.C.G.S. § 50A-1 *et seq.* (UCCJA), Kentucky, not North Carolina, is the home state of the child. The court dismissed the action with prejudice on the ground that it lacked subject matter jurisdiction and vacated all previously-entered orders. Plaintiffs appeal.

---

The issues presented are (I) whether the Compact applies to the facts of this case; and, if so, (II) whether the trial court properly concluded that defendants are the "sending agency," as that term is used in the Compact, and thus retain jurisdiction over the child to effect or cause his return to Kentucky. Because our resolution of these issues is determinative of plaintiffs' appeal, we do not address whether the trial court erred in determining that the child lived "from birth" with the Shorts in Kentucky and that, therefore, Kentucky is the child's "home state" as that term is defined in the UCCJA for the purpose of determining jurisdiction of plaintiffs' custody action.

I

[1] The legislature enacted the Compact in 1971, and its provisions govern *inter alia*, independent adoptions of children between states which are parties to the Compact. *See generally* Bernadette W. Hartfield, *The Role of the Interstate Compact on the Placement of Children in Interstate Adoption*, 68 Neb. L. Rev. 292 (1989) [hereinafter *Hartfield*]. Plaintiffs argue that the Compact is inapplicable to the instant case based on the following provision in Article VIII of the Compact:

This Compact shall not apply to: (a) the sending or bringing of a child into a receiving state by his parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or nonagency guardian in the receiving state.

N.C.G.S. § 110-57.1, art. VIII(a) (1991). Plaintiffs argue that they are "nonagency guardians" as that term is used in Article VIII(a), and that, because the child was sent to North Carolina by his parents, the provisions of the Compact do not apply. We disagree.

When the Compact is read in its entirety, it is apparent that Article VIII(a) contemplates the exclusion from the operation of the Compact of the sending of a child by a parent, relative, or guardian who possesses the full legal right to plan for the welfare of the child, *see Hartfield*, 68 Neb. L. Rev. at 311, and simply *leaving the child* with a relative or nonagency guardian in another state. The plain meaning of the phrase "and leaving the child with" in Article VIII(a) contemplates an arrangement made for care of the child of a family character, and does not encompass placement of the child for adoption, which the provisions of the Compact expressly govern. Even if plaintiffs are "nonagency guardians" as they contend, because the record establishes that defendants sent the child to plaintiffs in North Carolina as a preliminary to a possible adoption by plaintiffs, and did not simply "leav[e] the child with" plaintiffs, we reject plaintiffs' argument that Article VIII(a) excludes the instant case from the operation of the Compact.

II

[2] Plaintiffs argue that defendants are not the "sending agency" as that term is used in the Compact, and thus the retention of jurisdiction provisions do not apply to defendants. We disagree.

The Compact defines the term "sending agency" as

a party state officer or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a *person*, corporation, association, charitable agency or other entity *which sends*, brings, *or causes to be sent* or brought *any child to another party state*.

N.C.G.S. § 110-57.1, art. II(b) (1991) (emphasis added). "The definition of sending agency is broad enough to include any individual or entity, including a parent . . . , that causes a child to be moved

interstate." *Hartfield, 68 Neb. L. Rev. at 309.* The Compact in pertinent part provides that, prior to sending any child into a receiving state as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authority in the receiving state (which in North Carolina is the Department of Human Resources, *see id.* art. II(e)) with written notice of the intention to send the child into the receiving state. *Id.* art. III(b). The Compact further provides that

> [t]he sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, *until the child is adopted* . . . . Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law.

*Id.* art. V(a) (emphasis added).

In the instant case, the record indicates that defendants executed an Interstate Compact Placement Request giving notice of their intent to place their unborn child with "Larry and Mary Jane Stancil [of] Midland, North Carolina." At the end of the placement request, in the blank specified for the "signature of sending agency or person," appears the signatures "Teresa Brock, Michael W. Brock." We conclude that, because defendants are persons who sent the child to North Carolina for possible adoption by plaintiffs, they are the "sending agency" as that term is used in Article II(b) of the Compact. As such, pursuant to Article V, they retain jurisdiction, that is, authority or control, *see The American Heritage Dictionary* 694 (2d ed. 1982), over the child until his adoption, which has not occurred. *See Department of Health and Rehabilitative Servs. v. J.M.L.*, 455 So. 2d 571 (Fla. Dist. Ct. App. 1984) (trial court's relinquishment of jurisdiction over children prior to their adoption violated Article V(a) of Compact); *In re Walker*, 87 A.D.2d 435 (N.Y. App. Div. 1982), *rev'd on other grounds sub nom. In re Kim*, 445 N.E.2d 645 (N.Y. 1983) (until children are adopted or meet other criteria specified in Article V, sending agency possesses ongoing jurisdiction over them). This authority includes the power to effect or cause the return of the child to Kentucky, and "to determine all matters in relation to the custody" of the child.

N.C.G.S. § 110-57.1, art. V(a) (1991). The trial court properly determined that it "ha[d] no jurisdiction to hear this matter."

Affirmed.

Chief Judge ARNOLD and Judge COZORT concur.