BROWN, Judge.
Intervener, John Bolton, (subsequently incorporated as Plane Flight, Inc.), appeals the fixing and ranking of his repairman’s privilege for the amount of two annual aircraft inspections and storage charges on a 1966 Piper Aircraft owned by defendant, Alfred Zadoorian. We amend and as amended, affirm.

FACTS

On May 4, 1990, Zadoorian, through his company, Autohouse Used Cars, Inc., a luxury car dealership, purchased the 1966 Piper Aircraft from Travis Ringo in the Bahamas. The plane was flown to Monroe, Louisiana, for use in Zadoorian’s business.
On November 21,1991, Zadoorian, as president, executed a $120,000 note for Auto-house. On that same day, Alfred Zadoorian and his wife, Concepcion, executed a commercial guaranty agreement covering the Autohouse debt and promising payment for any loans made to Autohouse. Also, on November 21, Zadoorian granted Louisiana Bank of Ouachita a security interest in the 1966 Piper Aircraft. Paul Coburn of Louisiana Bank testified that a UCC-1 form was filed in Ouachita Parish on December 9,1991. Louisiana Bank also filed a Federal Aviation Administration security agreement on December 23, 1991, in Oklahoma City.[1]
According to Bolton, Zadoorian and his employee/partner, Gholamali Moghimi, asked Bolton to fly the plane to Bastrop for its annual inspection on November 6, 1991. A yearly inspection is required for an aircraft to qualify for its license. Bolton testified that he was told by Zadoorian to do what it takes to get the plane “up and running” and licensed. Bolton took this to mean that any necessary repairs should be made. Bolton took possession of|2the aircraft on November 6, 1991, and flew it to his hangar in Bastrop, Louisiana. Bolton started the inspection shortly thereafter. The inspection was done in a piecemeal fashion because Moghimi wanted Bolton to teach him how to inspect the aircraft. Bolton testified that the fee for ferrying the plane from Monroe to Bastrop was $100 and the fee for the annual inspection was $795. While conducting the inspection, Bolton found several things which rendered the aircraft unairworthy. Bolton began the repairs under the assumption that he had Zadoorian’s permission.
While the plane was being repaired, Za-doorian and Moghimi severed their business relationship. Moghimi then contacted Bolton in late December or early January 1992 and told him to cease working on the aircraft. Bolton stopped work on January 2, 1992, at which time he had completed the annual inspection and was 85-90% through with the necessary repairs.
Zadoorian testified that he never instructed Bolton to take the plane to Bastrop, inspect the plane or make any repairs.
From January 2, 1992, the day Bolton was instructed to stop working on the aircraft, Bolton began charging a storage fee of $15 a day. The plane was stored in Bolton’s maintenance hangar, which was insured.
Tina Harper, city clerk for Bastrop, testified that there was space available in the city hangar to store the aircraft at a rate of $45 a month. Paul Coburn of Louisiana Bank testified that after researching the cost, he concluded that $720 for the inspection and $85 a month for storage was normal.
*643 Bobby Ward, a certified and licensed aircraft mechanic who worked for Bolton for over three and one-half years, testified that an annual inspection costs $600-$800. |sHe also testified that if you inspected the plane, it was understood that you would do the repair work necessary.

PROCEDURAL HISTORY

On August 10,1992, Louisiana Bank filed a petition for executory process against Alfred Zadoorian and Concepcion Lara Zadoorian seeking to recover the balance owed by Auto-house on the $120,000 note which was guaranteed by the Zadoorians. On March 10, 1993, John Bolton, individually, and as sole stockholder and president of Plane Flight, Inc., intervened in the above suit, asserting his repairman’s privilege under LSA-R.S. 9:4501 and 4502.
By judgment dated May 17, 1993, the trial court found that Bolton worked on the plane from November 6, 1991, to early January 1992, a period of approximately two months, and that the Bank’s security interest was perfected December 9, 1991, the date the UCC-1 form was filed in Ouachita Parish. The trial court recognized Bolton’s repairman’s privilege as superior to the Bank’s security interest to the extent of a $100 ferryman’s fee and $357.75 inspection fee. The trial court believed that Bolton’s repairman’s privilege primed the Bank’s chattel mortgage for work completed up to December 9th, when the UCC-1 form was filed. This work was valued at $357.75. The court also allowed Bolton storage fees at a rate of $15 per day from August 10,1992, the date of the Bank’s seizure, until the airplane was sold. The court found Bolton’s other claims inferior to Louisiana Bank’s security interest.
The aircraft was sold for a total of $37,500 on June 9, 1993. Out of the proceeds, the following dispositions were made:
Sheriff Costs $ 281.12
Sheriff Commissions 2,250.00
Clerk of Court 355.48
I ¿Advertising 119.33
"Appraisers 30.00
Repairman’s Privilege 457.75
Storage 4,530.00
R. Douglas Wood, Jr. & La. Bank of Ouachita Parish $29,476.32
Total Costs $37,500.00
Bolton appeals the trial court’s judgment raising the following assignments of error:
(I) Louisiana Bank’s filing a security agreement did not limit or terminate any repairman’s lien as of the date the security interest was filed.
(II) The trial court erred by not awarding storage fees from January 7, 1992 (date Bolton stopped working on the aircraft) until August 10, 1992 (date of seizure).
(III) The trial court erred in not compensating Bolton for work done on a second annual inspection which commenced on July 29, 1992.

DISCUSSION

Repairman’s Lien

The trial court found that the fee for the annual airplane inspection of $795 was appropriate but limited recovery to $357.75 as representing work done up to the perfection of Louisiana Bank’s security interest on December 9,1991. As of that date, the court found that Bolton’s repairman’s privilege was primed.
LSA-R.S. 9:4501(A) provides as follows:
Any person operating a garage or other place where automobiles or other machinery are repaired, or parts thereof are made or furnished, has a privilege upon the automobile or other machinery for the amount of the cost of repairs made, parts made or furnished, and labor performed.
... This privilege is effective for a period of one hundred twenty days from the last day on which materials were furnished or labor was performed if the thing affected by such privilege is removed from the place of business where such labor was performed or materials were furnished; provided that if the thing affected by such privilege remains in the place of business of the person who furnished such materials or performed such labor, such privilege continues as long as such thing remains in such place of business.... (emphasis added).
*644 See also Quality Transmission, Inc. v. Curry, 600 So.2d 93 (La.App. 2d Cir.1992).
| .^Although Zadoorian denied authorizing Bolton’s work, the trial court’s finding that Bolton had permission to inspect the aircraft is not clearly wrong or manifestly erroneous. Bolton took possession of the aircraft on November 6,1991. From November 6,1991, until Bolton was finished with the inspection and necessary repairs, or as in this case, was ordered to stop, Bolton’s repairman’s privilege primed any security interest recorded thereafter by Louisiana Bank. Thus, we pretermit the determination of whether Louisiana Bank’s security interest is ranked from the date granted, November 21, 1991, the date of filing in Ouachita Parish, December 9, 1991, or the date of filing with the central registry in Oklahoma City, December 23, 1991.
We accordingly amend the trial court’s ruling to recognize Bolton’s repairman’s privilege for the total annual inspection fee of $795, which is ranked superior to the security interest held by Louisiana Bank.

Storage Charges

Courts have held that a repair shop is entitled to storage fees. Lake Charles Nissan Inc. v. State Farm, 590 So.2d 614, 615 (La.App. 3d Cir.1991). In Milam Realty Co. v. Jones, 7 So.2d 405, 406 (La.App. 2d Cir. 1942), this court recognized that a repairman’s privilege on an automobile included storage charges.
Finding that Bolton’s mechanic’s privilege attached prior to Louisiana Bank’s chattel mortgage, we hold that such privilege also includes reasonable storage charges. Thus, Bolton is entitled to reasonable storage charges for the preservation of the aircraft from January 2, 1992, the day he was told to cease work on the aircraft. We further find that the daily storage fee set by the trial court was within its wide discretion. Therefore, the trial court’s l ¡judgment is amended to grant Bolton’s storage charges from January 2, 1992, until the date of the sheriffs sale, at the rate of $15 per day.

Second Inspection

In July 1992, Moghimi had been recognized as Zadoorian’s partner defacto in Autohouse. Moghimi thereafter requested that Bolton perform a second annual inspection on the aircraft. Bolton testified that this inspection was completed in early August 1992.
LSA-R.S. 9:4502(B) states of the repairman’s privilege that:
... (t)his privilege is superior to all other privileges except for a vendor’s privilege, a chattel mortgage previously recorded, a previously perfected security interest under Chapter 9 of Louisiana Commercial Laws, or against a bona fide purchaser to whom possession has been delivered and who has paid the purchase price without previous notice of the existence of the privilege. (emphasis added).
Even if Bolton was properly authorized to commence his second inspection and had a valid lien for this work, under applicable Louisiana law Bolton’s repairman’s privilege would be subordinate to Louisiana Bank’s prior recorded chattel mortgage. Thus, the trial court was correct in ranking this claim as inferior to Louisiana Bank’s security interest.

CONCLUSION

We amend the trial court’s award to recognize intervener’s superior repairman’s privilege to include recovery of $795 for the inspection of the aircraft and storage fees from January 2,1992, until the date of the'sheriffs sale at the rate of $15 per day. In all other respects, the trial court’s judgment is affirmed. All costs are to be paid by Louisiana Bank of Ouachita.

. Oklahoma City is the location of the central registry for filing security agreements affecting aircraft.