McRAE, Presiding Justice,
for the. Court:
¶ 1. This case comes before this Court on two consolidated interlocutory appeals involving related matters of the Oktibbeha County Department of Human Services (DHS) in placing a child with out-of-state relatives without a hearing in Youth Court, thereby voiding the orders of the Youth Court, and resulting in DHS stating that it lost control of the child. Furthermore, this case involves the question of which jurisdiction has control over the child and whether all parties are before the Chancery Court of Oktibbeha County. Finding that the chancery court has jurisdiction and that all parties are before the court, we affirm and remand this case to the chancery court for further disposition.
¶ 2. When the natural mother and father were incarcerated in 1995, their infant son was placed in the custody of the Oktibbeha Department of Human Services. Pursuant to a youth court ruling and under the authority of the Interstate Compact on the Placement of Children (ICPC), DHS placed the infant in the custody of out-of-state relatives, a married couple. The husband in the married couple is the paternal cousin of the infant. The youth court orders, however, were subsequently voided due to procedural deficiencies.
¶ 3. Upon her release from jail, the natural mother sought the return of her child from the out-of-state relatives and DHS. The mother filed a petition for a writ of habeas corpus requesting that DHS be instructed to return the child to Mississippi. She also filed a complaint against the out-of-state relatives in Mississippi to obtain permanent custody of her child. Both DHS and the out-of-state relatives filed motions to dismiss claiming that Mississippi lost jurisdiction and authority over the child when the youth court orders were voided. The motions to dismiss were denied. Both DHS and the out-of-state relatives filed interlocutory appeals, which have been consolidated into the appeal that is currently before the Court.
*1228 ¶ 4. The habeas corpus court’s order instructing DHS to return the child to Mississippi and the chancery court’s order overruling the out-of-state relatives motion to dismiss were correct in their holdings. The ICPC clearly states that Mississippi has authority and jurisdiction over the child. The mere fact that the youth court’s orders sending the child to another state were voided does not mean that this state’s responsibility for its children transferred out-of-state by DHS magically disappears. DHS sent the child out of state; therefore, it has an absolute duty to return the child to this state. Furthermore, it is without question that the state of Mississippi and its courts have jurisdiction over the child. Accordingly, the interlocutory appeals are affirmed, and the two actions are hereby consolidated and remanded to the Chancery Court of Oktibbeha County so that a full trial on the issue of custody of the child can take place.

STATEMENT OF THE CASE

¶ 5. This case comes before this Court on an appeal that has been consolidated from two interlocutory appeals from related matters. The first interlocutory appeal arises from an interlocutory order of the Oktibbeha County Chancery Court, sitting as a habeas corpus court, requiring the Oktibbeha County Department of Human Services (DHS) to bring the five-year-old child to the court on Monday, September 21,1999. At that time, the child was living in North Carolina with the father’s relatives, F. and P.G. F.G. is a paternal cousin of the child. The child was placed there by DHS in February 1996, under the broad discretion of its laws and the authority of a youth court order when both of the child’s natural parents went to jail. The child’s mother, N.G., agreed to the child’s placement with F. and P.G.
¶ 6. The second interlocutory appeal arises out of the mother’s complaint for custody of the child, filed in April of 1999, in the Chancery Court of Oktibbeha County naming F. and P.G. as defendants. The mother, upon her release from jail, filed a petition for a writ of habeas corpus in the Chancery Court of Oktibbeha County on September 8, 1998, seeking to have her child restored to her custody. The court ordered DHS to produce the child in court. DHS, however, claimed that it could not produce the child because it no longer has custody of the child and filed an interlocutory appeal of the Chancellor’s order.
¶ 7. An explanation of why DHS claims it cannot bring the child into court requires a description of the events that took place in the Youth Court of Oktibbeha County. The child was born January 11, 1994. The child first came to the attention of DHS at two months of age. On March 10, 1994, the youth court granted temporary custody for 48 hours to DHS based on alleged neglect: 1) the child was seen in the ER for an illness and his parents were allegedly intoxicated at the time; 2) the child was improperly dressed for cold weather; 3) the mother was jailed for public drunkenness; and 4) the father was in jail charged with simple assault on the mother while the child was in her arms.
¶ 8. No hearing was held, but various orders were entered culminating with a May 10, 1994, order returning the child to the mother. On June 10, 1994, an agreed order was entered finding the child to be an abused and neglected child, and custody was awarded to the parents with supervision by DHS for six months. The father was to get inpatient treatment and the mother outpatient treatment. No further action was taken until the next year.
¶ 9. On March 2, 1995, a petition was filed alleging that the child was abused and neglected, that both parents were drunk, *1229 and that the mother was battered by the father. Temporary custody was awarded to DHS. No hearing on the petition was ever had. On March 30, 1995, the child was ordered by the youth court to be placed with DHS. On May 19, 1995, a consent judgment was entered stating that there was no adjudication of neglect or abuse but that the child would remain with DHS for 90 days with reasonable efforts made by DHS to return the child to the parents. When the child was returned to the parents, both father and mother had obtained treatment and were attending church.
¶ 10. On September 23, 1995, the parents were arrested in Hinds County. The child was in a car with the mother, who was intoxicated and asleep. The father had run into the woods to burglarize a house. The child was found crying and with a dirty diaper. The child was returned to the custody of DHS. On October 5,1995, a preliminary order of custody was entered because the child was being neglected due to the parents’ substance abuse.
¶ 11. Two months later, an order was issued, although no petition was filed, giving temporary custody to DHS based on neglect due to substance abuse. A continued custody order was entered on December 7,1995.
¶ 12. On February 8, 1996, DHS filed a petition alleging the child was abused and neglected based on 1) the parents’ lifestyle, 2) the parents’ incarceration,[1] 3) efforts by DHS to work with the family had failed, and 4) that this was the third time for DHS to have custody. “Continued custody” orders were filed on February 9 and February 22. The last order recited that the child had been placed with the father’s relatives, F. and P.G., in North Carolina since no relatives in Mississippi would assume responsibility for the child. F. is a paternal cousin of the child. No hearing was held on those orders.
¶ 13. In May 1996, the mother was released from jail. On August 12, 1996, an order was entered scheduling a “Disposi-tional Review Hearing.” On August 21, 1996, an order was entered continuing custody. Another continued custody order was entered February 19,1997.
¶ 14. On May 28,1997, DHS filed notice of referral for termination of parental rights. That same day a continued custody order entered.
¶ 15. On July 9,1997, the mother filed a motion asking the court to change custody to her. A hearing was set for August 20, 1997, but no order was entered on that date.
¶ 16. Meanwhile, on September 3, 1997, the chancery court heard DHS’s motion to terminate parental rights. That petition was denied September 26,1997.
¶ 17. On October 20,1997, an order was entered giving custody to the mother. The guardian ad litem noticed an appeal of that order as well as a motion for rehearing which the guardian ad litem later dismissed. On November 14, 1997, the guardian ad litem filed a “Re Notice of Appeal” and on November 19, 1997, the youth court referee granted a rehearing of his October order. The order was entered December 8, 1997, and the mother filed a notice of appeal.
¶ 18. On June 26, 1998, the referee entered an order denying the mother’s request for custody and leaving custody with DHS.
*1230 ¶ 19. On August 31, 1998, the chancellor, sitting as a youth court judge, dismissed all of the youth court orders awarding custody of the child to DHS, and found that the appropriate jurisdiction for determining the placement of the child was in chancery court. The youth court’s action was based on the fact that no hearing had ever been held on any of the petitions filed by DHS, and, thus, the youth court lacked jurisdiction to determine custody.[2]
¶ 20. On September 9, 1998, the mother, N.G., filed a petition for a writ of habeas corpus against DHS in the Chancery Court of Oktibbeha County. Just two days later on September 11, 1998, a North Carolina court granted F. and P.G. temporary custody.
¶ 21. On November 5, 1998, in order to resolve the jurisdictional questions, the chancellor ordered DHS to bring the child to Mississippi “for the sole purpose of asserting this State’s authority over the child to await the final hearing in this habeas corpus suit.... ” It was from that order that DHS brought its interlocutory appeal. DHS claims that it cannot produce the child because DHS only had custody of the child pursuant to the orders of the youth court. Since the youth court order on August 31, 1998, rescinded all orders giving custody of the child to DHS, DHS claims it does not have any authority over the child and appeals the order of the chancery court requiring it to produce the child.
¶ 22. The mother filed a second lawsuit, and an interlocutory appeal is before this Court in the second case as well. In April 1999, the mother filed a Complaint for Custody in the Chancery Court of Oktib-beha County naming F. and P.G. (the North Carolina relatives) as defendants. F. and P.G. moved to dismiss the case on the grounds of lack of jurisdiction over the parties and lack of jurisdiction of the subject matter. Since they were residents of the state of North Carolina, the child had resided in North Carolina for the past four years, and there is an action currently pending in the State of North Carolina to determine custody of the child, they argue that jurisdiction is not proper in the state of Mississippi.
¶ 23. The chancery court denied the motion to dismiss on September 22, 1999, holding that jurisdiction was proper in Mississippi pursuant to Article V of the Interstate Compact on the Placement of Children.
¶ 24. The North Carolina relatives filed a motion to reconsider arguing that the youth court’s dismissal of the orders giving custody to DHS made the Interstate Compact on the Placement of Children inapplicable to this case. The chancery court denied the motion to reconsider and refused to certify an interlocutory appeal. The North Carolina relatives petitioned this Court for an interlocutory appeal, and this Court granted the petition.

STATEMENT OF THE ISSUES

¶ 25. The issues presented by the appellants in both cases are listed as followed:
I. WHETHER THE CHANCELLOR, SITTING AS A HABEAS CORPUS COURT, DID NOT FOLLOW THE LAW IN PLACING THE MINOR INTO THE CUSTODY OF THE OK-TIBBEHA COUNTY DEPARTMENT OF HUMAN SERVICES FOR THE *1231 SOLE PURPOSE OF ASSERTING THIS STATE’S ALLEGED AUTHORITY OYER THE MINOR FOR RETURN OF THE MINOR TO THE STATE OF MISSISSIPPI TO AWAIT THE FINAL HEARING IN A HABE-AS CORPUS SUIT AND THE RETURN OF SAID MINOR FOR PRODUCTION BEFORE THE COURT IN A HABEAS CORPUS SUIT.
II. WHETHER THE CHANCELLOR, SITTING AS A HABEAS CORPUS COURT, DID NOT FOLLOW THE LAW IN REQUIRING THE OK-TIBBEHA COUNTY DEPARTMENT OF HUMAN SERVICES TO RETURN THE MINOR TO THE STATE OF MISSISSIPPI THROUGH THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN WHEN SAID CHILD IS NO LONGER IN THE LAWFUL CUSTODY OF THE DEPARTMENT.
III. WHETHER THE CHANCELLOR, SITTING AS A HABEAS CORPUS COURT, DID NOT FOLLOW THE LAW IN ORDERING THE DEPARTMENT TO INTERVENE IN A FOREIGN LAWSUIT AND FURTHER DIRECTING SAID AGENCY AS TO THE POSITION IT MUST TAKE IN A LAWSUIT.
IV. WHETHER THE CHANCELLOR, SITTING AS A HABEAS CORPUS COURT, DID NOT FOLLOW THE LAW IN ORDERING A CHANGE OF CUSTODY WITHOUT FIRST MAKING A DETERMINATION AS TO WHETHER SUCH CHANGE IS IN THE BEST INTEREST OF THE CHILD.
V. WHETHER THE CHANCEL-
LOR, JAMES S. GORE, IN CAUSE NO. 99-0162, ERRED IN HOLDING AS A MATTER OF LAW, IN HIS SEPTEMBER 23, 1999, ORDER THAT THE CHANCERY COURT OF OKTIBBEHA COUNTY, MISSISSIPPI, HAD JURISDICTION TO HEAR THE COMPLAINT.
VI.WHETHER THE CHANCELLOR JAMES S. GORE, IN CAUSE NO. 99-0162, ERRED HOLDING AS A MATTER OF LAW THAT THE EARLIER RULING ON SEPTEMBER 23, 1999, WAS CORRECT AND THAT HE HAD JURISDICTION PURSUANT TO THE INTERSTATE COMPACT ON PLACEMENT OF CHILDREN WAS RES JUDICATA.
The above issues have been consolidated to the following issues as will be discussed below.
I. WHETHER DHS LOST ITS POWER AND AUTHORITY UNDER THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN TO BRING THE CHILD BEFORE THE CHANCERY COURT OF OKTIB-BEHA COUNTY WHEN THE ORDERS OF THE YOUTH COURT WERE VACATED.
II. WHETHER F. AND P.G. ARE SUBJECT TO THE JURISDICTION OF THE STATE OF MISSISSIPPI UNDER THE LONG ARM STATUTE.
III. WHETHER THE UNIFORM CHILD CUSTODY JURISDICTION ACT, MISS.CODE ANN. § 93-23-1 CONFLICTS WITH THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN, MISS.CODE ANN. § 43-18-1, SUCH THAT MISSISSIPPI NO LONGER HAS JURISDICTION OVER THE CHILD.
IV. WHETHER THE CHANCERY COURT CAN ORDER DHS TO INTERVENE IN A FOREIGN STATE’S LAW SUIT.
V. WHETHER THE CHANCELLOR, SITTING AS A HABEAS CORPUS COURT, FOLLOWED THE *1232 LAW IN ORDERING A CHANGE OF CUSTODY WITHOUT FIRST MAKING A DETERMINATION AS TO WHETHER SUCH CHANGE IS IN THE BEST INTEREST OF THE CHILD.

DISCUSSION

I. WHETHER DHS LOST ITS POWER AND AUTHORITY UNDER THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN TO BRING THE CHILD BEFORE THE CHANCERY COURT OF OKTIBBEHA COUNTY WHEN THE ORDERS OF THE YOUTH COURT WERE VACATED.
¶ 26. DHS argues that, because there have been no allegations that the child was delinquent, neglected, abused, in need of special care or dependent, compliance with the court’s order would require it to exceed the authority it is given by statute. Because the orders which had placed the child in the custody of DHS were dismissed, DHS claims that it no longer has authority over the child.
¶27. Additionally, DHS argues that, when the youth court vacated the orders granting DHS authority and custody of the child, it lost jurisdiction and could not even recover the child under the Interstate Compact on the Placement of Children.
¶ 28. The mother asserts that for three years DHS claimed to have custody of the child and now when it is time to return the child to its mother, DHS claims that not only does it not have custody, but the orders originally granting it custody are void and it has no authority to return her child. If this were in fact the case, the child would be in North Carolina illegally.
¶ 29. As a practical matter, to the extent that DHS (and the North Carolina relatives) had custody of the child pursuant to the previous orders of the youth court, the youth court’s action in dismissing those orders for lack of jurisdiction does not magically render DHS powerless over the child as DHS argues. Miss.Code Ann. § 11 — 43-35 (1972), however, gives DHS the power to bring the child before the court to determine rightful custody. In Huffman v. Griffin, 337 So.2d 715 (Miss.1976), this Court ruled that a resident defendant who had control of a child may be compelled to produce the child before the court.
¶ 30. Additionally, the Interstate Compact on the Placement of Children (ICPC), Miss.Code Ann. §§ 43-18-1 to 17 (2000), also provides authority for DHS to return the child to the state of Mississippi. The ICPC governs the interstate placement of children. Article V of the Compact provides as follows:
(a) The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency’s state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law....
¶ 31. The child was given into the care of F. and P.G. in North Carolina by DHS under the auspices of the ICPC. The ICPC clearly provides that the “sending agency,” DHS, retains jurisdiction over the child. It is immaterial that the youth court judge “dismissed” the orders which originally gave custody to DHS. DHS as the “sending agency” under the ICPC, maintains jurisdiction over the child.
¶32. F. and P.G. also argue in their interlocutory appeal that Mississippi’s jur *1233 isdiction was lost when the youth court orders were vacated. Again such reasoning is flawed. Regardless of whether the court order that originally granted placement of the child has been vacated, the jurisdiction under the ICPC applies to the “sending state,” the State of Mississippi, and not the youth court. The statute is clear and unambiguous wherein it states that the “sending state” shall retain jurisdiction. Jurisdiction in Mississippi was not lost merely because the youth court lost jurisdiction over the matter, especially since Chancellor Lancaster, sitting as a youth court judge, held that the proper court having jurisdiction was the Chancery Court of Oktibbeha County, the court out of which the interlocutory appeals arise.
¶ 33. Both Mississippi and North Carolina have adopted the ICPC. While Mississippi does not have any cases interpreting this act, the North Carolina courts have construed the act and held that the sending state retains jurisdiction over the child. In Stancil v. Brock, 108 N.C.App. 745, 425 S.E.2d 446 (1993), the parents of an unborn child were Kentucky residents and had agreed to allow their child to be adopted by a couple who were North Carolina residents. The Kentucky couple decided to keep their child, and a dispute arose over what state had jurisdiction to hear the matter. The Court of Appeals of North Carolina concluded that since the Kentucky couple had requested the placement of their child in North Carolina, they were the “sending agency” of their unborn child; and therefore, under Article V of the ICPC, Kentucky courts retained jurisdiction over the child. Thus, this issue is without merit.
II. WHETHER F. AND P.G. ARE SUBJECT TO THE JURISDICTION OF THE STATE OF MISSISSIPPI UNDER THE LONG ARM STATUTE.
¶ 34. F. and P.G. argue that the Chancery Court of Oktibbeha County, Mississippi, lacks jurisdiction to decide the matter and that since the child has been in North Carolina since February of 1996, the child is now subject to the jurisdiction of the courts of North Carolina. Further, they argue that since the chancery court is without jurisdiction, the orders directing F. and P.G. should be reversed and all cases in Mississippi concerning the custody of the child should be dismissed.
¶35. Because the child was placed in North Carolina by DHS under the ICPC and because of the agreement entered into between DHS in the state of Mississippi and F. and P.G. in the state of North Carolina, Mississippi continues to maintain jurisdiction over both parties and over the child, who is the subject matter of the agreement. F. and P.G. agreed to accept responsibility for caring for the child, while the child was in North Carolina, they subjected themselves to the jurisdiction of the state of Mississippi.
¶ 36. Mississippi did not lose jurisdiction over the child when DHS transported the child to North Carolina. The act even specifically states that the “sending state” shall retain jurisdiction.
¶ 37. As to the consolidated cases involving the mother and F. and P.G., the chancery court denied the motion to dismiss on September 22, 1999, holding that jurisdiction was proper in Mississippi pursuant to Article V of the Interstate Compact on the Placement of Children. F. and P.G. are under the jurisdiction of the state of Mississippi by accepting this child from DHS. There was no termination of parental rights of the mother, and F. and P.G. took custody of the child as compact parents pursuant to the ICPC. Because of these reasons, F. and P.G. cannot simply retain the child indefinitely and replace the natural mothér.
*1234 III.WHETHER THE UNIFORM CHILD CUSTODY JURISDICTION ACT, MISS. CODE ANN. § 93-23-1 CONFLICTS WITH THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN, MISS. CODE ANN. § 43-18-1, SUCH THAT MISSISSIPPI NO LONGER HAS JURISDICTION OYER THE CHILD.
¶ 38. The authority of the DHS to return the child to Mississippi under the ICPC is not diminished by the Uniform Child Custody Jurisdiction Act (UCCJA), Miss.Code Ann. § § 93-23-1 to-47 (1994 & Supp.2000). The Indiana Court of Appeals addressed this jurisdictional question, involving the UCCJA and the ICPC and found that they should be construed harmoniously. In re C.B., 616 N.E.2d 763 (Ind.Ct.App.1993). The court held that,
According to the UCCJA, specifically T.C.A. 36-6-215, (I.C.31-1-11.6-14) Tennessee could only exercise jurisdiction over C.B. if it was determined that Indiana did not have jurisdiction. Under Article V of the Compact, Indiana, as the sending state, clearly retains jurisdiction when it orders interstate placement. In a CHINS proceeding, that jurisdiction continues until the child and the child’s parent or guardian have been discharged by the court under I.C. 31-6^4 — 19(c) ... Thus, the Tennessee court was without jurisdiction to determine guardianship. Jurisdiction remained in the Marion County Court [Indiana].
616 N.E.2d at 768-69.
¶ 39. The child’s mother has not been discharged by the court and there has been no decree in a Mississippi court removing permanent custody from her and granting it to F. and P. G.. Since the mother is still in Mississippi and the child was transferred from Mississippi pursuant to the ICPC, then Mississippi is the “sending state” and retains jurisdiction pursuant to Article V of the ICPC.
IV. WHETHER THE CHANCERY COURT CAN ORDER DHS TO INTERVENE IN A FOREIGN STATE’S LAW SUIT.
¶ 40. DHS contends that the order requiring DHS to intervene in the North Carolina lawsuit requires the Department “to act in a manner that is inconsistent with its statutory duty, i.e., to advocate for the return of the minor to his natural parents when it is the position of the Department that such is not in the minor’s best interests.”
¶41. Since DHS was the “sending agency” under the ICPC, it has all the powers necessary to effectuate the purpose of § 11-43-35, including the power to intervene in the North Carolina lawsuit to bring the child to Mississippi for the purpose of determining custody. In In re V.R., 725 So.2d 241, 245 (Miss.1998) this Court held that the youth court judge has power to direct Department of Human Services (DHS) to initiate proceedings to terminate parental rights without prior application for such by DHS. The Chancellor, therefore, may order DHS to intervene in the North Carolina lawsuit and return the child to the state of Mississippi so that a full trial on the issue of custody may be had.
V. WHETHER THE CHANCELLOR, SITTING AS A HABEAS CORPUS COURT, FOLLOWED THE LAW IN ORDERING A CHANGE OF CUSTODY WITHOUT FIRST MAKING A DETERMINATION AS TO WHETHER SUCH CHANGE IS IN THE BEST INTEREST OF THE CHILD?
¶ 42. DHS argues that the chancellor has ordered the return of the child to the natural mother without making any findings whatsoever as to the child’s best in *1235 terests. This issue is not ripe. The child must first be returned to Mississippi.
¶ 43. It is true that a court must first determine the best interests of a child before the issue of custody is decided, but the Chancellor’s order that DHS return the child to the Court was not an order awarding custody to the mother. Rather, the order was a directive t'o DHS to bring the child to the Court so that a hearing might be held to determine the child’s custody. Once the child is returned to the Oktibbeha County Chancery Court, the matter can be addressed and DHS can put on proof to show the Court that the minor child should not be returned to the custody of his mother. Furthermore, F. and P.G. are before Oktibbeha County Chancery Court and can be directed to return the child to that court for a proper determination of the child’s custody.
CONCLUSION
¶ 44. The two cases have been consolidated bringing all parties necessary to resolve what is in the best interest of the child. The chancery court has the power to order DHS to produce the child for a habeas hearing notwithstanding the fact that the youth court “rescinded” the orders giving custody of the child to DHS. Furthermore, since F. and P.G. are before the chancery court, they too are subject to its orders. Mississippi has exclusive jurisdiction by virtue of entering the initial decree and the ICPC. The chancery court acting as a youth court did not decide the issue of jurisdiction which is before the Court today, whether the State of Mississippi has jurisdiction over the child. Rather, that court ruled only that the youth court no longer retained jurisdiction and that its prior orders were voided. The orders of the chancery court denying F. and P. G.’s motions to dismiss are hereby affirmed. Furthermore these actions are hereby consolidated and remanded to the Chancery Court of Oktibbeha County so that a full trial on the issue of custody of the child may be had.[3]
¶ 45. AFFIRMED AND REMANDED.
PITTMAN, C.J., BANKS, P.J., MILLS, WALLER, DIAZ and EASLEY, JJ„ concur.
SMITH, J., dissents with separate written opinion joined by COBB, J.

. As a result of their September arrests, the mother was sentenced to imprisonment for one year in the county jail. The father was scheduled to be released in December 2000.

. The youth court opinion stated, "the statute requires that the adjudicatory hearing be held within ninety days of the petition or 'The petition shall be dismissed with prejudice.' Section. 43-21-551(1) MCA.This is a mandatory requirement, and after the said ninety days has expired the youth court no longer has any jurisdiction.”

. A habeas court has the authority to conduct a full hearing to determine custody based on the best interests of the child. Brashers v. Green, 377 So.2d 597 (Miss.1979); Garza v. Shoffner, 386 So.2d 397, 398 (Miss.1980). See also May v. Anderson, 345 U.S. 528, 532 n. 4, 73 S.Ct. 840, 842, 97 L.Ed. 1221 (1953)
Generally, the venue of a habeas corpus proceeding is in the county where the child is being wrongfully detained. Bubac v. Boston, 600 So.2d 95 if 953 (Miss.1992); Logan v. Rankin, 230 Miss. 749, 759, 94 So.2d 330, 335 (1957). However, in the case of Huffman v. Griffin, 337 So.2d 715 (Miss.1976), the Court held that a habeas corpus court had jurisdiction even though the child was not in Mississippi when the mother filed suit. The child was returned to Mississippi when the Mississippi court threatened to punish the father with contempt if he did not return the child to the state. This Court held that a resident defendant who has control of a child and who has been personally served with process or entered a voluntary appearance, may be compelled to produce the child before the court. Id. at 722.